Applications for writs of habeas corpus are dismissed.

**Alvaro ALCORTA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 28080.**

Court of Criminal Appeals of Texas.

May 30, 1956.

Rehearing Denied Oct. 3, 1956.

E. P. Lipscomb, San Antonio, for appellant.

Hubert W. Green, Jr., Dist. Atty., Roy R. Barrera, Asst. Dist. Atty., San Antonio, Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The conviction is for murder; the punishment, death.

Appellant admittedly killed his wife by stabbing and cutting her with a knife.

At the time of the homicide the deceased was seated in an automobile in front of her house, and was in company with one Natividad Castilleja, when appellant appeared with knife in hand and began to cut and stab her. He continued his assault though Castilleja started the car and attempted to throw him off, then kicked and threw rocks at him until appellant ran Castilleja away with his knife.

Appellant then took charge of Castilleja's car and drove away with the deceased, finally dragging her body from the car and depositing it in a creek in Atascosa County.

Thereafter he abandoned the car in that County and, after traveling to Laredo and to the Rio Grande Valley, returned several days later to San Antonio where he obtained and cashed his last pay check.

He was apprehended the following day as he was traveling north from San Antonio toward Boerne.

Appellant and the deceased were the parents of three children. They had been separated for several months.

Appellant gave as his reason for killing his wife the fact that he was drunk, saw his wife kissing Natividad, and knew she had been going with other men and was not taking proper care of the children. He testified to no lawful excuse or justification for the killing, but gave the reasons indicated as mitigating circumstances.

The State's evidence shows that appellant had been placed under peace bond on

complaint of the deceased, and that earlier on the day of the homicide had made threats to kill her.

█ There is but one bill of exception, which is claimed to show ground for reversal. It is addressed to the introduction in evidence of "Five (5) large photographs of the deceased wife of the defendant, such photographs taken in the nude and showing thirty two (32) stab wounds on the body of deceased."

The bill of exception shows that such photographs were admitted over the objection that they were inflammatory and prejudicial and had no bearing on the case.

The trial court's qualification to the bill of exception certifies, however, that: "said pictures were allowed to be introduced as bearing on the question of malice in the case and further as bearing on the question of the denial of the defendant that the wounds were on the body of the deceased in the number and as represented by the medical officer and as represented by the testimony of the officer witnesses in the case making a material fact issue on a material issue in the case, * * *."

The record fully sustains the court's qualification. On the State's case in chief there was testimony to the effect that 32 cuts and stab wounds and bruises were found on the body.

Dr. David T. McMahon, Jr., Assistant Bexar County Health Officer, who made the autopsy after the body was embalmed, testified that there were 25 or 30 sewed lacerations over the face, neck, chest, thighs and legs, varying from one-half to four inches in length; lacerations over vital structures including two in the neck and several in the chest and over the heart and lungs, one of which punctured the heart and others the lungs, and one in the neck severed the left external jugular vein.

He further testified "the skull was examined completely and minutely externally and there were no wounds on the skull, except those before mentioned on the face."

Dr. McMahon expressed the opinion that death was from multiple causes, and though there were enough wounds in the vital structures that would have killed her, there were so many lacerations that had no vital structures been punctured she would have died anyway.

Appellant took the stand in his own behalf and, though admitting the stabbing and killing of his wife, questioned the accuracy of the testimony that had been offered by the State.

On direct examination he testified "I am not trying to accuse this guy (Natividad Castilleja) of trying to kill my wife or anything, but I know he hit her with a rock on her head. The rock was the size of a cantaloupe and *she must have had some injury to her head* * * * I ducked the rock and I saw that rock hit her and she fell forward, and then she went back; that's why her legs were hanging out of the door when I took out in the car and the door was open." (Emphasis supplied.)

On cross-examination appellant testified: "How could I stab*bed* my wife 32 times with the car going full speed and zig-zagging and being drunk and all? * * * I didn't say I stabbed her 32 times; that's what you got here. * * * I did stab her 9 times or so, maybe 15, but not 32; that is exaggerated. You can't stab a woman sitting in a car running zig-zag and holding yourself on the running board and with a knife stab her 32 times from here (indicating) to her head."

Also on cross-examination appellant testified that the blood on his pants "came from where the rock hit my wife in the head because her head was laying up here on the side (indicating)."

Upon rebuttal the photographs complained of were offered and admitted. They show the nude body of the deceased after it had been prepared for burial, and clearly

illustrate the correctness of the testimony of the State's witnesses as to the knife wounds. The photographs also show the absence of a wound on the head such as would probably have resulted had she been struck by the large rock.

■ Authorities cited in the brief of both the State and the appellant are to the effect that photographs which, in the light of the whole case, aid the jury in arriving at the truth of the matter, serve to illustrate some point or solve some question, or shed light upon matters connected with the proper solution of the case are admissible, and it is only where the photographs serve no legitimate purpose and are calculated to seriously inflame the minds of the jurors and tend to cause them to return a more onerous verdict than the facts call for or justify are such photographs excluded. Gibson v. State, 153 Tex.Cr.R. 582, 223 S. W.2d 625; Mouton v. State, 155 Tex.Cr.R. 450, 235 S.W.2d 645; Cantrell v. State, 156 Tex.Cr.R. 329, 242 S.W.2d 387; Griffin v. State, 150 Tex.Cr.R. 27, 198 S.W.2d 587; Ray v. State, 160 Tex.Cr.R. 12, 266 S.W.2d 124.

Under the rule stated and the evidence before him, the trial court did not err in admitting the photographs, and the bill of exception as qualified shows no error.

The judgment is affirmed.

DAVIDSON, Judge (dissenting).

It has long been the holding of this court that pictures of the body of deceased or of wounds to the body are not admissible in evidence and only become so when they tend to establish some disputed issue in the case. See Willis v. State, 49 Tex.Cr.R. 139, 90 S.W. 1100; Gibson v. State, 153 Tex. Cr.R. 582, 223 S.W.2d 625; Mouton v. State, 155 Tex.Cr.R. 450, 235 S.W.2d 645. It is the exception to the rule, and not the rule itself, that authorizes the introduction of such pictures.

Under the holding of my brethren, here, that rule no longer exists and is effactually

overruled, for they approve the introduction in evidence of—not one, but five—pictures of the nude body of the deceased, in which numerous wounds are shown upon her body not tending in any way to solve any disputed issue in the case.

Now let us examine the facts:

In the presentation of its testimony, in chief, the state proved in detail, by some twelve or thirteen witnesses, the thirty-two stab wounds and their location on the body of the deceased.

There was not a line of testimony from any person directly attacking the testimony of those witnesses.

All the testimony showed that deceased came to her death by being stabbed by the appellant with a knife. No witness denied that fact, and appellant admitted it in his confession.

Testifying as a witness upon direct examination, appellant admitted killing the deceased, who was his wife, by stabbing her with a knife. At no time in his direct testimony did he challenge the testimony of the state's witnesses as to the fact that he killed deceased by stabbing her with a knife or as to the number and location of the wounds inflicted.

Appellant's testimony showed facts that might authorize mitigation of punishment. No other defense was asserted or imposed.

There was no issue, under these facts, as to appellant's guilt or as to the fact that he killed his wife by stabbing her with a knife; such fact was admitted by the appellant.

That is the situation existing when the state took over the cross-examination of the appellant.

The first thing counsel for the state had appellant do was to identify his signature to the confession which the state offered in evidence. In that confession appellant admitted that he killed his wife by stabbing her "any number of times" with a knife.

He did not challenge that statement in the confession.

After an extended and grueling cross-examination, state's counsel then proceeded to interrogate and receive replies from appellant as to the number of wounds on her body, as follows:

"Q. Did you hear the Doctor testify that there were 25 to 30 stab wounds on your wife's body? A. Yes, I heard that.

\* \* \* \* \* \*

"Q. The Doctor testified 25 to 30? A. Yes.

"Q. And the officer counted them? A. You can not do that standing on the running board and the car going zig-zagging and—

\* \* \* \* \* \*

"Q. Did you hear Officer Saenz testify that he counted 32 stab wounds on your wife's body? A. That is what he testified to.

"Q. That's framed up? A. He didn't say anything about the injury or wound on her head.

"Q. Is that a frame-up? A. Sure it is; I betcha (sic) my wife got the wound on her head because I am positive she was hit with the rock.

"Q. In addition to that wound on the head, did you hear the officer testify that there were 32 stab wounds on the body? A. She didn't have *no* 32, that's a lie.

"Q. There weren't 32 stab wounds on the body? A. I didn't count them, how many times I stabbed her.

"Q. You could have stabbed her 32 times? A. 32 is too many; and the places she had them, that's impossible too the way everything happened; you can not do that standing on the running board and the car going zig-zagging and my wife the way she was. That is impossible."

It is upon these facts that the state contended, and my brethren agree, that such a material issue as to appellant's guilt was raised by the evidence in the case as that the introduction of the pictures in evidence was warranted—and this, in the face of appellant's testimony that he did not and could not have counted the wounds, himself, or that he examined the body of deceased, or that he was in position to know the number of wounds.

The sole issue in the case was: Did appellant kill his wife by stabbing her with a knife? He admitted that he did and the uncontradicted facts so show. Whether the killing resulted from thirty-two wounds or from a fewer number was not necessary to be determined in order to convict or to fix appellant's guilt.

It must be remembered that appellant did not go into the question as to the number of wounds on the body; the state, itself, did that. Up until the time the state interrogated appellant, the number of wounds or their location was not mentioned by appellant.

As above pointed out, there was not and could not have been the semblance of any issue or testimony in the case which would authorize the introduction of the pictures in evidence.

I can reach no other conclusion but that the state's cross-examination was not for the purpose of determining the number of wounds on the body of the deceased or how she came to her death, but was for the purpose of securing from appellant some contradicting testimony as a basis for getting the pictures in evidence—but for which it could not be done. The state sought to do indirectly that which it could not do directly.

If there were any issue as to the number of wounds, the state made the issue and developed the facts to show such issue; the appellant did not do so. The state, then, relies upon contradictory facts which it developed as its own testimony. I can

ascribe to that action by the state no purpose other than to create a fictitious issue for the sole purpose of getting the pictures before the jury, which could otherwise not lawfully be done.

Moreover, when appellant's testimony on cross-examination is analyzed, it is found that he is referring not to the number of wounds the state's witnesses testified to finding upon the body of the deceased but to the fact that he did not inflict thirty-two wounds thereon. He did not challenge the existence of thirty-two wounds on the body.

The state's witnesses did not know and therefore could not testify that appellant inflicted the thirty-two wounds on the body. So is it apparent then, in the first instance, that there is really no contradiction of the testimony of the state's witnesses.

The five pictures showing the nude body of the deceased in various positions—ghastly . . . horrible, as they are—were highly inflammatory and calculated to arouse against the perpetrator the prejudice of those who viewed them. They were clearly calculated to cause, and did cause, the jury to inflict the death penalty. But for their introduction in evidence, the jury —in my opinion—would not have assessed the death penalty.

There is no place for speculation as to the injury to appellant by the introduction of the pictures in evidence.

The pictures were not admissible in evidence. It is only out of respect for the dead that I do not incorporate those pictures in this opinion.

I could, at some length, discuss the reason back of and upon which rests the rule forbidding the use in evidence of pictures of the body of the deceased showing the wounds thereon in a murder case unless they tend to solve some material and disputed issue in the case, but I will content myself, here, by calling attention to the fact that trial by jury contemplates a fair trial under the law, without passion or prejudice.

A conviction which is brought about as a result of passion and prejudice, aroused and engendered in the minds of the jury by inadmissible testimony, ought not to be permitted to stand.

For all I know, this Latin-American may deserve the death penalty for stabbing his wife to death when he found her hugging and kissing another man. But such is not for me to determine.

It is my duty to determine whether appellant had a fair trial under the law. This, I am convinced, he was not accorded.

I dissent.

On Motion for Rehearing

MORRISON, Presiding Judge.

■ The pictures, which form the basis for this appeal, have been described as ghastly and horrible. In a sense this is true of any picture of the body upon which acts of violence have been committed. The body portrayed in these pictures had been cleaned and lay prone on a hospital bed. They were not taken at the scene of the crime, and no blood or weapons were visible. We concluded originally that an issue had been made by the appellant's testimony as to the number of wounds he had inflicted upon the body of the deceased, together with his testimony about Castilleja having inflicted an injury to her head. To the writer it is immaterial that this issue was raised by cross-examination. It was raised by the defendant's testimony.

Now to return to a description of the pictures. Our opinion herein is not to be construed as necessarily authorizing the introduction of pictures taken at the scene of the crime lying in pools of blood, but we do hold here that pictures such as these which tend to solve a disputed issue are admissible, especially when taken against the least possible inflammatory background.

Appellant's motion for rehearing is overruled.