**John Franklin BURNS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 37516.**

Court of Criminal Appeals of Texas.

Feb. 17, 1965.

Rehearing Denied April 7, 1965.

Louis G. Mehr, Court appointed atty., J. R. Ramsey, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Thomas C. Dunn, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is murder; the punishment, death.

The evidence adduced by the state is reflected by the testimony from 10 witnesses.

On the 21st day of August, 1963, appellant, John Franklin Burns, W. H. Perkins, and Jessie J. Odum, deceased, spent a good portion of the evening going from bar to to bar, and drinking beer, in the section of Houston and surrounding areas through which the Market Street Road passes in

Harris County, Texas. Perkins and appellant met about 7:30 P.M. at Jack and Betty's Lounge or Bar, in Cloverleaf community on Market Street. They drank some beer together. Then, with another man, Franklin Gregory, they went to the Red Lantern in Greens Bayou, where they drank a beer, and then proceeded to Sand's Bar down the street, also in Greens Bayou. From there, Perkins and appellant went to Eddie's Ice House or Drive-In, also in Greens Bayou, Gregory leaving them. After about an hour to an hour and a half at Eddie's Ice House, Perkins and appellant left and subsequently stopped at "The Place" in Cloverleaf. There, about 9:30 or 10:00 P.M., they met Jessie Odum, the deceased. The three of them left together, Odum and appellant in appellant's truck, and Perkins in his own vehicle. They went to Catfish Charlie's Place in Cloverleaf, drank a beer, spending about half an hour there. From there, they continued on to Jack & Betty's Place in Perkin's truck and drank one beer. Then, they went back to Catfish Charlie's. The car of the deceased, Odum, was at the Red Lantern. At Catfish Charlie's, Perkins let appellant and deceased out of his truck and saw them go toward appellant's truck. Then, Perkins turned back and went to the Greens Bayou Cafe. That was the last time that he saw Jessie Odum alive.

On this night, sixteen-year-old James L. Roberts, a student at Channelview High School, had gone to a dance with another boy named Vance Townsend, and a girl named Sherry Brown. The young people were in a car driven by Sherry's father, Robert Brown, on their way home, about 11:30 P.M. They were going on Highway 73, which is near Market Street, and had turned off at the exit of Highway 73, going to Channelview, proceeding in an easterly direction. This was the feeder street to Sheldon Road. Young Roberts saw a truck on the side of the road and told Mr. Brown he thought something was "funny" back there. He had seen a man in a ditch, with another man over him. Mr. Brown backed

up and, in the car lights, young Roberts saw appellant going through the pockets of a man lying in the ditch, and heard what he thought was a gurgling sound from the man in the ditch. The noise sounded as though the man had phlegm in his throat and could not get it out. The man was moaning and groaning.

Appellant, being asked what was wrong, replied that his buddy was drunk, that everything was okay, and for them to go on. They did go on. As soon as Roberts got home, he told his mother something was wrong. They called the Harris County Sheriff's Office. Then, Roberts and his brother went back to the scene and met Sheriff's Deputies. While they were waiting at the scene, from which the truck and appellant had disappeared, the appellant drove by in his truck and young Roberts pointed it out to the deputies, who followed appellant and arrested him. Appellant had blood, of the same type as that of the deceased, on his face, clothing, hands, on a knife of which he had possession, and at various spots on his truck. He had blood on his shoes. Deputies found the deceased lying in the ditch, with his throat cut from ear to ear so badly that his head almost fell off when they moved him. He was lying on top of a piece of pipe. The back of his head had been struck—a blow with some instrument. He had four mortal wounds, the cut throat, and three cuts or stabs in the left chest. The testimony as to the seriousness of the wounds was that of the Harris County Medical Examiner, Dr. Jachimczyk.

The testimony of Roberts was corroborated by that of Miss Sherry Brown.

Deputy John Klevenhagen testified that he found the deceased lying dead in a quarter-inch deep pool of blood. The witness further related: "His throat was cut from ear to ear. It was barely holding his head on". In response to a question as to the depth of the wound, he said: "You could see all the way through his head. His throat was cut and his neck was cut com-

pletely through. The only thing that held his head on when we put it on the stretcher is that I had to take my hand and hold it, to keep it from falling off the body."

Deputy Klevenhagen caught appellant about a quarter of a mile from the location of the crime, after appellant was pointed out by young Roberts. He testified as to appellant's condition—blood spattered on his face, blood on his glasses, blood over the top of his pockets, blood in his pockets where he had run his hands in his pockets, blood on his hands, blood on the soles of his boots. The deceased's pockets were turned inside out. Appellant had considerable money in his pockets when he was arrested, and stated in his confession that he had drawn $20.00 the day of the events, and only had forty-five cents left at the time of the killing. Appellant stated in his confession that he put the money which he "got off Jessie" in his shirt pocket.

The voluntary statement of appellant was offered in evidence. Prior to it being admitted, the careful trial judge afforded appellant's counsel the opportunity of, and he fully examined state's witness, Captain M. F. Patton of the Harris County Sheriff's Office, on voir dire, out of the presence of the jury, on the facts and circumstances surrounding the taking of the confession. No question of force or coercion was raised, the appellant's counsel did inquire if appellant was intoxicated at the time that he gave the statement, and the witness responded that he was not. Appellant's counsel then stated that he objected to the confession, but he did not state upon what grounds. The trial judge then stated that he held the confession admissible. The jury was then brought in and the confession admitted into evidence and no further nor other objection was urged nor was any motion to strike made.

Appellant adduced testimony from the witness, Ruth Fowler, who testified that she owned the beer tavern on Market Street Road known as "The Place". She related

that the deceased, Odum, the appellant and Perkins came in her place late on the evening in question and that "they were all visibly intoxicated," and, "I asked them to leave."

Appellant recalled state's witness, John Klevenhagen, who testified that appellant did not appear to have been drinking.

Officer Deckman, a state's witness, was recalled by appellant, and he testified that he did not think appellant was intoxicated, but he had been drinking, but "he did not appear intoxicated."

Appellant then took the stand in his own behalf and testified as to his age, personal background, relating his two marriages, his service in the navy and army and the various beer joints visited on the evening in question. He related that Bill Perkins let him and Jessie Odum, the deceased, out of his truck; that he offered to drive the deceased to his car but deceased said he wanted to go to Channelview.

Appellant related that he suggested to deceased that he take him to his car and "then you can go from there", but deceased stated: "Well, if people don't do what I want them to, I have means of making them do it." Appellant said that after deceased made the foregoing statement that he decided that the best thing to do was to take him to Channelview and that he started toward Channelview, but he thought that he had a flat tire and he stopped and went around to the right side of the truck. He got his flashlight from the glove compartment, checked his tires and found they were not flat, and put the flashlight back in the glove compartment and at that time "Jessie turned around and straightened up and looking at me all glassy-eyed, with a weird look, and he slid out of the truck with that piece of pipe in his hand." Appellant stated that he was scared and that he did the only thing that he knew to do—"I was taught all the time in the service to defend myself." Appellant disclaimed any knowledge of or ownership of the pocket knife which had

been recovered by the officers and which had been introduced into the evidence by the state as an exhibit. Appellant said that he remembered cutting Jessie, "trying to defend myself from him, and that piece of pipe." He stated that the deceased swung at him with the pipe, but that he was not hit. He did not recall getting the piece of pipe away from deceased, *nor did he recall hitting deceased with the piece of pipe.* Appellant also testified that he was not aware of when he was cutting deceased. He stated: "No, sir, not at first. After it was over and I left, it seemed like there was a blank space in between there, until I got to the San Jacinto River, and then I turned around and came back." Appellant then related that he came back to the scene and the Sheriff's car and an ambulance were there; that the ambulance was just leaving and he started by real slowly; that he did not know that he had killed the deceased and that he told the officers that he had come back to take the deceased to a doctor but the officer told him that "a doctor won't do him no good." Appellant stated that this was the first he knew that the deceased was dead. He was then asked: *"Did you know at that time whether he had been cut?"* He replied: *"No, sir, not until the officers told me."* Later on in his testimony the appellant was asked by his counsel: "Do you remember cutting him?" and the appellant stated: "Yes, sir", but he related that he did not remember what happened after he cut the deceased, that he just remembered "him falling, and that was it."

Appellant testified upon cross-examination that he had the knife in his hand but that he did not know where it came from. He was then asked the question: "And with that knife, I believe you say, *you remember cutting Jessie Odum, but you don't remember where. Is that your testimony?"* Appellant responded: "Yes, sir." Appellant was subsequently asked this question: *"Why did you hit him in the head with the pipe?"* He replied: *"I didn't hit him".* Appellant testified that he did not remember robbing the deceased, nor did he remember

telling the Roberts boy to go on, "this fellow is drunk. I will take care of it". Appellant was then shown a picture of deceased. He testified he could recognize deceased's face, and that deceased's neck was wide open. Then came this testimony:

> "Q: You know enough about human beings to know that the man who cut that throat had to have a lot of muscle behind it. It couldn't be a little-old fish knife. It had to be a lot of muscle?"

> "A: Yes, sir."

> "Q: *Do you remember inflicting that neck wound?"*

> "A: Not exactly the neck wound."

The Court properly charged the jury on the issue of self-defense, and this issue was resolved against appellant.

We find the evidence amply sufficient to support the verdict.

There are no formal bills of exception. No exceptions and objections were taken to the court's charge, nor was any request made for a special charge.

Appellant's counsel urges as error one contention, which is the admission into evidence of certain photographs. This contention is brought forward by informal bill of exception. Initially the state adduced testimony from Deputy Sheriff Eddie Knowles who testified that he took all of the pictures and that they truly and accurately represent what is shown in them. The state then offered into evidence six different photographs, state's exhibit No. 9, (which only showed a public road), having been offered earlier without objection. State's Exhibits Nos. 3 and 7, being respectively a picture of appellant's hands with what appears to be a few blood stains on them, and a picture of a man lying face down in a clump of grass with a piece of pipe protruding from underneath his body. At the time these two exhibits were ad-

mitted appellant's counsel stated: "If it please the court, we would like to object to the admission of these photographs in evidence". The Court then stated: "I am going to overrule your objection as to these two (State's Exhibit No. 3 and State's Exhibit No. 7) and will rule on the others later." Then, at the conclusion of the testimony, when the appellant rested, the state re-offered Exhibits Numbers 4, 5, 6 and 8, with the statement to the court that in view of the fact that "It is now an issue of the case, of murder with or without malice, and I think for the purpose of showing malice, the pictures are admissible." The Court responded: "All right". Appellant's counsel then stated: "The same objection as before. The testimony of the Medical Examiner is sufficient to describe the nature and seriousness of the wounds, and these pictures would only inflame the minds of the jury." The Court overruled the objection and the exhibits referred to were passed to the jury for their inspection. Both sides then rested their case.

Two of the complained of photographs are colored, the other two being black and white. The first one, Exhibit 4, is a colored photograph of the deceased shown lying on his back with his eyes open and his entire throat lying open about an inch wide just under the chin, showing what appears to be some internal muscles or organs on the interior of the throat and a mass of red blood on the throat, chin and two red gashes on the chest. Exhibit No. 5 is similar to No. 4 except No. 5 is not in color and the deceased has a shirt on in this picture. Exhibit No. 5 appears to have been taken by a photographer who took the shot directly from above deceased's body, while the picture taken in Exhibit No. 4 appears to have been taken by a photographer standing at the left side of deceased. Exhibit No. 6 is a black and white photograph of the deceased, shown lying on his back with the slit throat clearly visible. This exhibit apparently was taken by a photographer while standing on the right side of deceased. Exhibit No. 8 is a colored photograph of de-

ceased, shown lying down on his face on a stretcher in a pool or small quantity of blood underneath his head and blood on the back of his head and on the right ear and across the back of his neck.

Appellant cites the Davis v. State, 165 Tex.Cr.R. 456, 308 S.W.2d 880, case, in which Judge Woodley wrote the opinion and cited therein the case of Shaver v. State, 162 Tex.Cr.R. 15, 280 S.W.2d 740. Appellant points out that according to the law of the above cited case the material factor in determining the admissibility of photographs is whether they illustrate a material fact. He also cites Craig v. State, 171 Tex.Cr.R. 256, 347 S.W.2d 255, in which this Court held that the photographs did shed light on the transaction and tended to refute appellant's testimony and his version as to how the fatal injury took place. A disputed issue of fact was involved in that case which the photographs tended to solve. Wilkerson v. State, 170 Tex.Cr.R. 525, 342 S.W.2d 431 is cited us by appellant to illustrate his contention that the photographs were admitted to resolve a disputed fact issue. Alcorta v. State, Tex.Cr.App., 294 S.W.2d 112, also cited by appellant held that photographs were admissible to show the number and location of wounds, which was a resolution of a disputed fact issue created by appellant and also the photographs were "introduced as bearing on the question of malice." We shall later discuss this case. Appellant finally cites us the case of Gibson v. State, 153 Tex.Cr.R. 582, 223 S.W.2d 625, which we shall discuss later.

Appellant contends that the testimony of Dr. Joseph Alexander Jachimczyk and that of Deputy Sheriff Johnny Klevenhagen clearly shows without dispute the nature of the wounds, their location and the probable effect of each wound, and he contends that at no point in appellant's testimony, does he deny cutting the deceased or question the extent of the cutting or the location of the wounds. Appellant then cites the additional cases of Borroum v. State, 168 Tex. Cr.R. 552, 331 S.W.2d 314; Whaley v. State,

Tex.Cr.App., 367 S.W.2d 703 and Cavazos v. State, Tex.Cr.App., 365 S.W.2d 178, in which Alcorta v. State, supra, is cited with approval. All of these cases called for reversals because of the admission into evidence of photographs which did not solve any disputed issue, most of these cases also pointed out that the photographs were inflammatory, and should not, under a similar record, be admitted in evidence upon another trial.

It is clear to us that appellant's testimony, as above set forth by us, does create a disputed fact issue in several instances. Appellant testified in one juncture of his testimony that he did not know where he had cut the deceased. He also testified that he did not hit the deceased with the iron pipe. This testimony created a disputed fact issue and made admissible the photographs. The photographs of the front part of deceased's body clearly show the wounds from the cutting and those on the back side of deceased show the injuries to the head, indicating a blow from the iron pipe or some similar object. We overrule appellant's contention. While the photographs were gruesome, they were admissible. The testimony of the various witnesses who observed the body and testified in detail as to what they saw was also gruesome. The state had charged the appellant with a specific crime and had the burden of proving such charge beyond a reasonable doubt. In attempting to carry such burden it had to accept matters as it found them and could not be squeamish about them. While the evidence was cumulative in the sense that the description of the body as it was found had already been related to the jury, the photographs tended to present material details tending to refute appellant's testimony and thus resolve the disputed fact issue as to the places where the decedent was cut and his being struck or hit with the iron pipe, in a way which statements by witnesses could not as accurately portray. Evidence having a natural tendency to establish the facts in controversy

should be admitted. "A party cannot have competent evidence excluded merely because it might arouse feelings of horror and indignation in the jury." People v. Jenko, 410 Ill. 478, 102 N.E.2d 783; Craig v. State, 171 Tex.Cr.R. 256, 347 S.W.2d 255; Wilkerson v. State, 170 Tex.Cr.R. 525, 342 S.W.2d 431 and Alcorta v. State, supra, is cited with approval as to a resolution of a disputed fact issue, but we discard the holding as to a bearing on the question of *malice*.

We think that this Court has inadvertently created some conflicts through its decisions through the years in its opinions dealing with the admissibility of photographs. In this particular case the state urged the admissibility of the photographs on the theory that *they showed malice*. The state properly cited us among other cases, the cases of Ray v. State, 160 Tex.Cr.R. 12, 266 S.W.2d 124 and Gibson v. State, 153 Tex.Cr.R. 582, 223 S.W.2d 625 in support of its position. We have not only carefully examined our prior holdings in these two cases, but we have also examined the entire field of cases dealing with the admissibility and inadmissibility of photographs. The facts in the Ray case are similar to the case at bar in that a pathologist gave lengthy testimony, detailing an account of the wounds sustained by a 5 year old child, who had allegedly been beaten and stomped by the defendant therein, wherein the defendant contended that the child's injuries were caused by falls. Photographs were admitted, not for the reason that they tended to solve a disputed fact issue, but *they were admitted on the issue of malice* and *intent*. This was a unanimous opinion by this Court in 1954 in which the case of Gibson, supra, was cited by approval.

Gibson, supra, was a murder case from Big Spring in which the death penalty was imposed. Judge Graves wrote the opinion for this Court on appellant's motion for rehearing in which he complained of certain photographs introduced by the state. Appellant urged in his oral argument that the

pictures of the deceased's body were inflammatory and probably caused the jury to render a verdict of death. The opinion reflects that appellant's counsel objected to the introduction of these pictures for the reason that no proper predicate had been laid to introduce them since their authenticity had not been properly shown. "It will thus be noted that the objection went only to a verification of the fact that the photographs correctly portrayed the matter which they were supposed to reflect." Judge Graves then states that the objection was fully met by the state. However, he then outlines the evidence which shows that the *appellant did actually create a fact issue,* which these pictures would have been admissible to resolve, but he then concludes the opinion by the statement that the pictures were useful to the jury *in not only determining an intent to kill, but also on the issue of malice.* Actually, what Judge Graves said in the opinion amounts to dicta, as he had previously determined that the pictures were admissible in the absence of a proper objection. However, this case has been cited with approval by various members of this court so many times, including the writer in the opinion written by him for this court in Craig, supra, as authority for the introduction of photographs that it now occupies a place as precedent, rather than dicta, in our jurisprudence.

In Cantrell v. State, 156 Tex.Cr.R. 329, 242 S.W.2d 387, a murder without malice case where the appellant, a deputy sheriff in Nacogdoches County, killed a drunk while trying to arrest him, this court held that two pictures taken of the body of the deceased at the undertaker's following the homicide were admissible on the basis that "the condition evidenced by the photographs was useful to the jury *in not only determining an intent to kill, but also the malice, if any, was shown;* and photographs have always been held admissible provided they serve to illustrate any necessary point in the cause."

Alcorta v. State, supra, was a murder case in which the death penalty was imposed. Appellant killed his wife by stabbing and cutting her with a knife. Five photographs were introduced showing the nude body of the deceased and showing 32 stab wounds on the body. They were admitted over objection that they were inflammatory and prejudicial and had no bearing on the case. There was testimony by the state that there were 32 stab wounds and cuts on the body, but appellant denied that there were 32 cuts, he said: "I did stab her 9 times or so, maybe 15, but not 32." The opinion states that the record fully sustains the trial court's qualification certifying that the pictures were allowed to be introduced *as bearing on the question of malice* in the case and further *as bearing on the question of the denial of the defendant that the wounds were on the body of the deceased in the number as represented by the medical officer* and the testimony, making a material fact issue on a material issue in the case.

In Whaley v. State, Tex.Cr.App., 367 S.W.2d 703, a murder case with a life penalty imposed, three pictures of the nude body of the deceased and two pictures of the automobile in which he had been seated and which showed large pools of blood were offered in evidence by the state over proper objection. The Court reversed this case in a unanimous opinion, stating that *none of these pictures solved any issue in the case,* were highly inflammatory and should not have been admitted in evidence. The opinion cited Cavazos v. State, Tex.Cr.App., 365 S.W.2d 178 and Alcorta v. State, Tex. Cr.App., 294 S.W.2d 112.

In Wilkerson v. State, 170 Tex.Cr.R. 525, 342 S.W.2d 431, a murder case wherein the punishment assessed was 99 years, appellant was asked concerning various bruises on his wife's dead body shown by a photograph. He stated: "She wasn't bruised like that." "Q: You say she wasn't bruised like that?" "A: They

didn't show any bruises like that at all only on her cheek." The state established that the photograph and another similar one were identified by the officer who took them as a true representation of the scene; of the body lying on the bed and showing the bruises on the body as he viewed them through the naked eye. The court failed to state exactly the basis for sustaining the trial court in admitting the photograph. To the writer, it is clear that the photograph was admitted because it aided in solving a disputed fact issue; that is, the number of bruises on the body of the deceased. The opinion cites with approval the cases of Gibson, supra; Ray, supra, and Cantrell, supra. The opinion states that Wooley v. State, 162 Tex.Cr.R. 378, 285 S.W.2d 218 and Shaver v. State, 162 Tex.Cr.R. 15, 280 S.W.2d 740 at best are dicta. Wooley's case was reversed for failure of the trial court to instruct the jury as to the force and effect of the exculpatory statements contained in the confession but Judge Dice said in a unanimous opinion: "Upon another trial, under the same or similar evidence, the pictures showing the bloody condition of the body of the deceased should not be admitted in evidence in view of their inflammatory nature."

In Shaver's case, 162 Tex.Cr.R. 15, 280 S.W.2d 740, in a unanimous opinion by Judge Belcher, the case was reversed because the evidence adduced on motion for new trial showed that a juror, prior to selection, had formed and expressed an opinion. Judge Belcher concludes the opinion by saying: "Appellant objected to a picture showing the body of the deceased at the scene of the crime. We have carefully considered the entire record in the light of appellant's objection thereto and are of the opinion that, upon another trial under the same or similar evidence, the picture shown in this record of the body should not be admitted in evidence."

Borroum v. State, 168 Tex.Cr.R. 552, 331 S.W.2d 314, was overruled to an extent in Judge Woodley's opinion in Wilkerson,

supra. He stated: "If anything said in the Borroum case, supra, may be construed as contrary to the rule stated in Gibson v. State, and Ray v. State, supra, such holding is specifically overruled." Borroum's case was reversed in an opinion by Judge Davidson upon the failure of the trial court to grant a special requested charge. Judge Morrison concurred in the reversal because of the introduction into the evidence of a photograph of the deceased.

Davis v. State, 165 Tex.Cr.R. 456, 308 S.W.2d 880, a murder case in which a life sentence was imposed, the court reversed the case in a unanimous opinion because the confession was admitted and the trial court did not afford appellant an opportunity to make his proof in the absence of the jury, as to the facts and circumstances surrounding the taking of the confession. The opinion concludes: "The pictures of the body of the deceased depicting the bloody condition of the floor and body should be excluded upon another trial as prejudicial and tending to prove no controverted issue," citing Shaver v. State, 162 Tex.Cr.R. 15, 280 S.W.2d 740.

It is abundantly clear to the writer that our opinions are conflicting and in need of clarifying. It seems to the writer that the Court should establish a rule of admissibility of photographs based upon one premise, that premise being that they are admissible if they tend to solve a disputed fact issue. The rule of admissibility to show malice and intent is too broad. Each member of this Court finds himself in the awkward position of "meeting himself coming back" with some of these decisions. We need to decide what to depart from, disclaim or overrule.

After mature and deliberate consideration the writer has concluded that the cases of Gibson v. State, supra; Ray v. State, supra; Cantrell v. State, supra, in so far as they held in homicide cases pictures of the body of the deceased or the scene of the crime where blood is shown, are admis-

sible solely on the grounds that they show malice and intent, are fundamentally unsound and they are hereby overruled. Also, Alcorta, supra, is modified to the extent that it should no longer be regarded as authority for the holding that photographs are admissible as bearing on the question of malice. The view expressed by the majority of this Court in Wilkerson, supra, (wherein we overruled Borroum, supra, to the extent that if anything said in the Borroum case may be construed as contrary to the rule stated in Gibson, supra, and Ray, supra) is rescinded.

Finding no reversible error, the judgment is affirmed.

WOODLEY, Judge (concurring).

I do not agree with the opinion prepared by Presiding Judge McDONALD but concur in the affirmance of the conviction and the holding that the admission in evidence of the pictures did not constitute reversible error.

The learned and experienced trial judge did not err in admitting the pictures under the rule stated in Ray v. State, 160 Tex. Cr.R. 12, 266 S.W.2d 124, which followed the holding in Gibson v. State, 153 Tex.Cr. R. 582, 223 S.W.2d 625, and was re-affirmed in Alcorta v. State, Tex.Cr.App., 294 S.W. 2d 112.

Reference to the opinions in the cited cases will reveal that the point of disagreement was not as to the rule, but whether or not there was a disputed issue in the case which the exhibit could tend to solve.

I do not construe any of the cases which have come to my attention as holding that a gruesome and inflammatory picture is admissible in a murder case simply because the indictment alleges malice and the picture may be of assistance to the state in obtaining a verdict of murder with malice. If there be a case which so holds, I agree that it should be overruled.

I understand the rule to be that a picture, though gruesome and inflammatory, is admissible if it serves to illustrate a disputed issue, whether it be the nature of the wounds, intent to kill, the issue of whether the killing was with malice or without malice, or was voluntary rather than excusable or justified, or any other material disputed issue.

The pictures were admitted on the disputed issue of whether the killing was upon malice, as charged, or was without malice. Such disputed issue was submitted to the jury in the court's charge, in accordance with Art. 1257c, Vernon's Ann.P.C. That the pictures were inflammatory, or that the state introduced other evidence on the disputed issue does not alter the rule. The trial judge was not in error in concluding that the pictures were admissible as tending to solve a disputed issue.

MORRISON, Judge (dissenting).

While I agree with my brother McDON-ALD that this Court, including the writer in his early opinion prepared for the Court in Cantrell v. State, supra, (1951), 156 Tex. Cr.R. 329, 242 S.W.2d 387, has been far from consistent in our holdings concerning the admissibility of pictures of the scene of the crime where blood abounds and of the body of the deceased in murder cases are shown. I further agree that malice is no proper predicate for the introduction of such pictures in cases where death does ensue, but I am still unable to agree to the affirmance of this conviction. I have examined this record with care to determine if the introduction of the pictures might be justified by appellant's testimony, but have failed to find therein sufficient justification for the admission of these lurid and ghastly pictures of this deceased almost completely decapitated. In fact they show the work of an imperfectly functioning guillotine.

At the time the colored pictures were admitted the testimony of the pathologist had

not been challenged nor had he been vigorously cross examined. He had testified that the deceased had sustained four fatal wounds including the neck wound which left " * * * the head literally hanging loosely, attached only to the back side; the front side was completely severed." In addition to this Officer Klevenhagen had testified, without any attempt on the part of the defense to refute it, that deceased's " * * * throat was cut from ear to ear. It was barely holding his head on * * * The only thing that held his head on when we put it on the stretcher is that I had to take my hand and hold it, to keep it from falling off the body." Appellant had admitted that he had cut the deceased prior to the introduction of the pictures.

It must be remembered that we do not have here just another witness describing the condition of the body of the deceased, but are here dealing with another medium of proof. These are colored and black and white photographs handed to the jury just before they retired to decide whether or not this appellant should live or die, which photographs would make the producers of the Frankenstein films hang their heads in shame. These photographs shed no light upon any disputed issue in this case which had been fully developed to a point where no rational jury would acquit and served the sole purpose of shocking the jury so deeply that they were rendered incapable of exercising cool reflection in deciding whether life imprisonment or death would be the proper punishment.

I respectfully dissent.

On Appellant's Motion for Rehearing

DICE, Commissioner.

We have again examined the record and the majority remain convinced that the court did not err in admitting in evidence the photographs of the deceased's body and of the appellant.

The pictures showing the nature and location of the wounds on the deceased's body and the bloody hands of appellant clearly tended to solve disputed issues in the case.

We have also examined the record in the light of appellant's contention that the judgment should be reversed because the body of the deceased was not sufficiently identified as the person charged to have been killed, as required by Art. 1204, Vernon's Ann.P.C.

The indictment charged that appellant killed Jessie J. Odum.

W. H. Perkins, the first witness called by the state testified that on the night of the killing he saw appellant with a person whom he knew by the name of "Jessie," and who he later learned was Jessie Odum. He further testified that the next time he saw Jessie Odum he was lying, dead, on a slab at Ben Taub Hospital, with his throat cut and three slashes across the chest.

Deputy sheriffs Klevenhagen, Deckman, and Knowles, throughout their testimony, referred to the dead body found at the scene as that of Jessie Odum.

The testimony was sufficient to identify the deceased as the person charged to have been killed.

The motion for rehearing is overruled.

Opinion approved by the court.