**Clifford Darrell CARROLL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 38373.**

Court of Criminal Appeals of Texas.

Oct. 4, 1965.

Rehearing Denied Nov. 24, 1965.

Second Motion for Rehearing Denied
Jan. 5, 1966.

Al Clyde, Fort Worth, for appellant.

Doug Crouch, Dist. Atty., Albert F. Fick, Jr., Grady Hight and Jack Beach, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is murder; the punishment, death.

The evidence presented by the state shows that while not legally married to her, the appellant lived in the city of Fort Worth, with his co-principal, Doris Jean Bowman, and her two daughters, Doris June and Paula Jeanette, age two.

On the night of March 3, 1964, appellant appeared at a neighbor's home around 9

p. m., carrying the nude lifeless body of Paula Jeanette in his arms. A visitor in the home proceeded to take him and the baby to St. Joseph's Hospital.

Upon being examined in the emergency room, the child was pronounced dead, and an autopsy was later performed.

Dr. H. Counts, Jr., the physician who first examined the deceased, testified, in describing the condition of her body, that the child had multiple areas that looked like she had been scalded, even inside her mouth; that along her back and buttocks around the pelvis there were several bruises, and a few areas that "looked like they had been—well, they are hard to describe—they could have been caused by several things. * * * They were wounds of some sort." Dr. Counts also stated that there were some bruises on the body that looked like a belt buckle mark and burns about the privates that looked like they were scalds.

Dr. O. J. Wollenman, Jr., the pathologist who performed the autopsy, with the use of photographic slides and photographs made of the deceased's body at the time, which he stated were necessary aids in describing the conditions he found, testified to numerous injuries and burns on the body—between 100 and 110 in number, and stated that there were very few areas on the body that were not traumatized. The doctor stated that there were bruises superimposed upon old bruises; that the injuries varied in age from several days to a few hours; that there were blisters and burns in the area around the vulva caused from heat; that a considerable amount of the child's blood had been consumed by the damage to her body; that in his opinion no single blow was the cause of death; that the burns, the most recent ones having been inflicted two to four hours before death, contributed to the death and that the cause of death was severe trauma, resulting in shock.

Mrs. Doris Bowman, the deceased's mother, who was serving a term in the penitentiary for the murder, upon being called as a witness by the state, related that appellant started living with her while she was in California and told of their having moved to Fort Worth some two months before the child's death. Mrs. Bowman stated that on the day in question, between 3 and 4 p. m., appellant—as was his custom—made Paula sit in a bathtub of cold water to punish her; that after some five minutes he had her get out and walk around, very fast, in the house for thirty minutes; that they then had supper, after which appellant had Paula to again sit in the tub of cold water; that he went in the bathroom where Paula was crying and brought her out and laid her across the bed; that Paula was pale and lifeless; that after appellant attempted to pump water out of the baby's mouth he returned to the bathroom and put her in the tub; that at appellant's direction the witness poured steaming hot water on Paula's "tender spot" between her legs while he held them apart; that Paula "would cry and twist around," her eyes "would open and shut," and she then collapsed, at which time appellant left the house with her in his arms. The witness further testified that appellant had on numerous occasions whipped and beaten the child with his belt, holding the belt so the buckle would strike the body; that he would whip her every night as a matter of "routine" and three or four times a day "when she needed it." She further stated that the marks were put on Paula's body by appellant prior to the night in question and that he did not whip her that day.

Appellant's written statement, excepting certain portions, made to the officers after being duly warned on the night in question, was introduced in evidence by the state. In such statement, appellant admitted that on the afternoon in question he told Paula to get in the tub of cold water and then told her to walk. Appellant admitted having, on such occasion, slapped Paula three or four times while in the bathtub and later carrying her to the neighbor's house and from there to the hospital.

Appellant did not testify but, in support of his defense of insanity, introduced in evidence a judgment entered in the Superior Court of the State of California on April 15, 1963, declaring him a mentally ill person and ordering him committed to a state hospital. The deposition of Dr. Stuart L. Parrish was also introduced, in which the doctor testified that he had treated appellant in 1963 for a nervous condition, at which time he was of the opinion that appellant was suffering from a chronic mental condition diagnosed as a schizophrenic case and recommended that he be admitted to a hospital for psychiatric treatment.

In rebuttal to the evidence presented by appellant on the issue of insanity, the state offered in evidence as state's exhibit #26 a certificate of competency, dated September 12, 1963, issued by Alic I. Barnett, R.R.L., for the superintendent and medical director of the Camarillo State Hospital, declaring appellant competent and certifying that he had been released from the hospital. In addition thereto, the state called, as witnesses, Dr. John T. Holbrook and Dr. Harold B. Mindell, who testified that they had examined appellant and that in their opinion he knew right from wrong and the nature and quality of his acts. Dr. Mindell testified, further, that in his opinion appellant knew right from wrong and the nature, quality, and consequences of his acts on March 3, 1964, the date of the alleged offense.

The jury, by their verdict, rejected appellant's defense of insanity and found him sane both on the date the offense was committed and at the time of trial.

■ We find the evidence sufficient to sustain such finding by the jury and to warrant the penalty assessed.

Complaint is made to the court's action in admitting in evidence, over appellant's objection, the photographic slides and photographs made of the deceased's body at the hospital on the night in question when the autopsy was being performed.

It is appellant's contention that the admission of such photographs and slides in evidence presented reversible error because they were very highly prejudicial and did not tend to solve any disputed issue in the case. The holding by this court in Burns v. State, 388 S.W.2d 690, is cited and relied upon in support of appellant's claim of error.

In Burns v. State, supra, the rule was stated that photographs like those introduced in the present case are admissible if they tend to solve a disputed fact issue but they are not admissible solely on the grounds that they show malice and intent.

■ An examination of the record reflects that the photographs were properly admitted to solve certain disputed issues raised in the trial of the case.

Upon cross-examination of Officer Latham, to whom the confession was made, appellant read into the record certain exculpatory portions of his statement in these words:

"I didn't recognize her, from the bruises that she had on her body and burns on her back. * * * I didn't know she had so many bruises or burns, in any shape or form. I didn't cause the marks on the front of her body that appeared to be made by a belt * * *."

Upon cross-examination of the state's witness Johnson, a fact issue was developed by appellant as to the cause of death, by answers elicited from the witness indicating that the deceased could have drowned.

Upon cross-examination of Officer Latham, it was brought out that in conversation with the officer appellant claimed knowledge only of certain burns on the child's arm and appellant indicated that he did not believe the child was in such a bruised and battered condition.

Officer Shackelford testified on direct examination by the state that in a conversation with appellant at the hospital on the

night in question appellant stated "he didn't know how it happened."

Under the record, issues were raised in the case as to the nature and number of wounds on the deceased and the cause of death, which the slides and photographs tended to solve; therefore, their admission in evidence was not error.

It should also be pointed out that the second count of the indictment which was submitted to the jury charged that appellant killed the deceased "by slapping, striking, hitting, and beating her with his hand and fist and by immersing her in water contained in a bathtub, and by pouring hot water upon her body, thereby and therewith causing and producing multiple injuries and a condition of shock, from which said shock the said Paula Bowman then and there died * * *." There was expert testimony that the condition of the child's body could not be accurately described without the use of other aids. By reason of such allegations of the indictment as to the means of producing death and the expert testimony that other aids were necessary to accurately describe the condition of the body, the slides and photographs were properly admitted in evidence.

■ Error is urged to the court's action in refusing to permit appellant to examine Officer Sowell in the jury's presence with reference to certain felony complaints alleged to have been filed against the witness's son which had been purportedly quashed and no action taken by the district attorney's office. Such inquiry, it is contended, was proper cross-examination in order that the jury might determine the bias or prejudice of the witness.

In the absence of the jury, appellant was permitted to examine the witness in perfecting his bill of exception, at which time the witness testified that his son had been charged with a crime but that he did not know if the matter was still pending. He further testified both in and out of the jury's presence that he had no personal reasons for testifying for the state. We perceive no error in the court's ruling.

■ Error is also urged to the court's action in admitting in evidence as state's exhibit #26 the certificate of competency, dated September 12, 1963, filed in the office of the county clerk of Kern County, California, by the superintendent of the Camarillo State Hospital of the State of California, certifying that appellant was competent and had been released from the hospital, over the objection that it was not properly exemplified.

The instrument was duly certified by a deputy of Vera K. Gibson, the County Clerk of the Superior Court of the State of California, County of Kern. While there was no certification attached that Vera K. Gibson was the duly qualified and acting county clerk, appellant's exhibit #5, previously introduced in evidence, did contain a certificate by the judge of the Superior Court of Kern County that Vera K. Gibson was the duly qualified county clerk of that county. The lack of such a certification to state's exhibit #26 was supplied by the certificate attached to appellant's exhibit #5. Art. 1938 of Vernon's Revised Civil Statutes authorizes a deputy clerk to perform all such official acts as may be lawfully done and performed by the clerk. It may be presumed that the law of California is the same as that in our state.

Appellant's remaining contention that he was prejudiced during the trial by the presence of television cameramen in the courtroom and the taking of both still and television pictures is not supported by a bill of exception and presents nothing for review.

The judgment is affirmed.

Opinion approved by the court.

MORRISON, Judge (dissenting).

While the color slides displayed before the jury in the case at bar were not as ghastly as the colored pictures in Burns v. State, supra, I can find no justification for

their admission from the record or the majority opinion and would reverse for this reason.

I respectfully dissent.

## ON APPELLANT'S MOTION FOR REHEARING

McDONALD, Presiding Judge.

Appellant's able counsel, by his motion and oral argument, urges that this Court erred in holding that certain slides and photographs of the nude, two-year old dead child were admissible to solve certain disputed issues raised in the trial of the case. Appellant originally relied upon the opinion of this Court in Burns v. State, 388 S.W.2d 690, and he now contends that our opinion in this case is contrary to Burns and that the law is in a state of confusion. We have carefully reviewed our holding in Burns and our opinion in this cause on original submission. We think that appellant's problem with these two cases lies in the fact that in the Burns case appellant took the stand as a witness in his own behalf, while in this case appellant did not testify. We think it immaterial as to the source of the testimony adduced by an appellant so long as the adduced testimony does create a disputed fact issue. We fail to see how it could make any difference if this disputed issue of fact were created by the appellant's own testimony, or, as in this case, from testimony brought out by appellant's counsel from other witnesses, either on direct or cross-examination. Were we to make such a distinction as appellant urges, we would be licensing him to go to any lengths in creating disputed fact issues and then place the State in the hopeless position of not being able to solve or refute these issues. We remain convinced that this cause was correctly disposed of in our original opinion.

Appellant's motion for rehearing is overruled.

MORRISON, J., remains convinced that the pictures were inadmissible.