**William WEBSTER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–81–046–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 27, 1982.
Rehearing Denied March 31, 1982.

Frank D. McCown, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for appellee.

Before HUGHES, JORDAN and BROWN, JJ.

## OPINION

JORDAN, Justice.

Appellant was convicted of a particularly vicious, gruesome murder of a 78 year old woman in Tarrant County Texas. He was sentenced by the jury to a term of life imprisonment in the Texas Department of Corrections.

His appeal is upon four grounds of error. We affirm the conviction and judgment of the trial court.

The victim, a 78 year old female, was brutally murdered on July 13, 1978. Her body was found just inside the front door of her residence on West Anthony Street in Fort Worth, Texas at about 5:30 p. m. She was found lying on the floor wedged against the front door, her body nude except for a brassiere around the middle of her body. She had multiple bruises, contusions and lacerations on her back; her sternum and several ribs were fractured and a window shade roller, a metal rod, was found inserted in her vagina.

Appellant's first ground of error is that there is insufficient evidence to identify him as the murderer. Appellant's defense to this murder was that of alibi. His claim was that on the day and at the time of the murder he was working at a construction site for his employer about a mile to a mile and a half away from the murder scene. His employer, Robert Pearson, Jr., testified to this effect. Mr. Pearson was the only witness for the defense.

Three witnesses, all neighbors of the victim residing on West Anthony Street in Fort Worth identified the appellant as the man seen running from the victim's residence shortly before 5:30 p. m. on July 13, 1978. One of these witnesses testified that at about 5:30 p. m. while she was sitting at her home across the street from the victim's residence, a man who was "sweaty and had blood on his face," ran by her. She identified this man as the appellant. Another neighbor testified that a man, sweaty and with blood on his face, ran in front of her car on College Avenue at about 5:25 p. m., and she identified this man as the appellant. This witness, a Mrs. Elliot, as well as the other two witnesses who identified the appellant, all said he was wearing a "brownish" shirt and jeans.

Mr. Morris Daniel, who lives directly across the street from the victim, at 908 West Anthony, testified that between 4:30 and 4:45 p. m. on this date he saw a man helping the deceased into her house. He testified that after hearing noises in the victim's house, he saw the same man who had helped the woman into the house run out of the front door of the victim's home and take off down the street. All of these witnesses were positive in identification of the appellant as the man who was seen running from the victim's residence at around 5:30 p. m. on July 13, 1978.

In his brief appellant simply attacks the testimony of the State's witnesses, as briefly outlined above, and argues in view of the positive alibi testimony of the witness Pearson, that the State's evidence is simply insufficient to support a finding that appellant was the murderer. He seems to argue

that the appellant's testimony given by appellant's employer who was the only defense witness, is stronger testimony than that offered by the State, and that it therefore should have been believed by the jury. This argument is somewhat meaningless, since the jury did believe the testimony offered by the State's witnesses. There is no question that the jury, in its wisdom, could have believed the testimony of the appellant's lone witness and rejected that of the State's witnesses. However, the jury did not do this, and it is clear that there was sufficient evidence to support the jury's verdict that appellant was seen at and around the house of the victim at about the time, or shortly before, her body was found in her home.

The testimony offered by the State supports and meets the test laid down by the United States Supreme Court in·Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979), where it was held that the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury under this evidence, could find, as it did beyond a reasonable doubt, that appellant killed the 78 year old lady.

■■■ Appellant's arguments as to the State's evidence, that it did not identify appellant as the murderer, and that there was no direct evidence that appellant actually killed this woman, all go merely to the weight of the evidence and not its admissibility. The jury, as the trier of facts, is authorized to weigh and consider all of the testimony, the State's as well as the defendant's testimony, to accept or reject any or all or part of such testimony, and to then reach its decision. This is what they did in this case and the evidence is perfectly sufficient to support their verdict. Appellant's first ground of error is overruled.

In his second ground of error appellant contends that the trial court erred in admitting a window shade roller into evidence. His contention is that since this particular instrument was not identified as the one

that was found in the victim's body, that it was therefore completely irrelevant to the issue of guilt of appellant, and that it was prejudicial to appellant because it elicited sympathy and resentment of the jury. It is true that the window shade roller was not identified as the same instrument found in the victim's body on July 13, 1978. However, one witness, a neighbor lady, who was the first one to arrive at the scene and to find the victim's body, testified that while she could not say that the roller introduced in evidence was the same instrument she saw inserted in the victim's body, she did say that it looked the same and appeared to be the same size and length. The police officer, who arrived at the scene shortly after the victim's body was found, testified that he found the window shade roller which was introduced into evidence in the kitchen of the victim's home about 30 minutes after the murder. He could not identify any finger prints on it.

■■■ It is well settled that in homicide cases the weapon with which the crime was committed, or alleged to have been committed, is admissible in evidence. *Chavira v. State*, 167 Tex.Cr.R. 197, 319 S.W.2d 115 (1958); *Lopez v. State*, 535 S.W.2d 643 (Tex. Crim.App.1976). It is equally well-settled that a lack of positive identification of the weapon affects only its weight as evidence, and not its admissibility. *Chavira, supra; Dow v. State*, 491 S.W.2d 917 (Tex.Crim. App.1973); *Mullenix v. State*, 499 S.W.2d 330 (Tex.Crim.App.1973). See also *Simmons v. State*, 622 S.W.2d 111 (Tex.Crim. App.1981).

■■■ The fact that competent evidence might arouse feelings of horror and indignation on the part of the jury does not make that evidence inadmissible. *Burns v. State*, 388 S.W.2d 690 (Tex.Crim.App.1965).

■■■ The window shade roller was alleged to be the instrument of death, and was therefore relevant and admissible. Any question as to its identity as the exact instrument that caused the death of this unfortunate elderly lady goes only to the weight of the evidence to be accorded by

the jury, and not to its admissibility. The roller was properly admitted. Appellant's second ground of error is overruled.

Appellant next contends in ground of error number three that the trial court erred in allowing into evidence at the punishment stage of the trial a penitentiary packet which was improperly certified. Appellant's prior conviction and prison record out of the State of Oklahoma, certified to by the director of central records of the Oklahoma Department of Corrections, was admitted. Appellant contends because the certification itself did not specifically identify appellant as the one whose record was being introduced at his trial that it was error for the court to admit it. The certification, as it indicated, was attached to five pages of records, containing, inter alia, a photograph and information sheet, a finger print card, and a judgment and sentence all bearing the name "William Webster".

Appellant does not contend that it was not his record that was introduced but simply says the certification itself was deficient because it did not specifically name him. We find this argument to be totally without merit and reject it. The certification, which was in proper form, sufficiently and adequately identified appellant as the possessor of the Oklahoma record. Appellant's cites no direct authority for the proposition that the mere omission of the appellant's name from the certification makes the records inadmissible. Appellant's third ground of error is overruled.

In his fourth and last ground of error appellant claims that the trial court erred in permitting the State to waive its first closing statement during jury arguments at the punishment stage of the trial. It is contended that this waiver denied the appellant due process in the punishment stage, since it hampered his attorney's ability to present an effective closing statement. There was no objection made by appellant to this procedure and any error is therefore waived. *Dinn v. State*, 570 S.W.2d 910, (Tex.Crim.App.1978).

However, even if any claimed error was not waived, we hold that the matter of permitting the State to waive its first closing statement of the punishment phase was discretionary with the court, and was not error. See, art. 36.07, V.A.C.C.P. which provides that "the order of the argument may be regulated by the presiding judge; but the State's counsel shall have the right to make the concluding address to the jury." See also *Granato v. State*, 493 S.W.2d 822 (Tex.Crim.App.1973) cert. denied, 414 U.S. 1009, 94 S.Ct. 372, 38 L.Ed.2d 247, (1973). The appellant's fourth ground of error is also overruled.

The judgment is affirmed.