HENRY BOOKMAN v. THE STATE.

No. 11964.   Delivered November 14, 1928.
Rehearing granted April 3, 1929.

234

The opinion states the case.

*F. B. Kimball, Ira Lawley* and *R. C. Cralle* of Groesbeck, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at death.

The questions of law involved related to the motion to quash the first count in the indictment and the absence of proof of want of knowledge on the part of the grand jurors of the means used by the appellant in causing the death of the deceased.

The first count in the indictment contains an averment that the appellant killed Mary Bookman in some manner and by some means, instruments or weapons to the grand jurors unknown. The averment on its face is sufficient. Sanchez v. State, 46 Tex. Crim. Rep. 179; Hughes v. State, 60 S. W. Rep. 562; Walker v. State, 14 Tex. Crim. App. 609. In refusing to quash the count mentioned no error was committed.

The second count charges that the appellant killed the deceased by beating her with an axe-handle. Both counts were submitted to the jury in the court's charge.

The evidence adduced on the trial leaves uncertain the precise cause of the death of the deceased but creates no doubt that she was killed by the acts of the appellant. Under such conditions, the averment in the indictment to the effect that the means used in causing the death was unknown to the grand jury is sufficiently proved. Forest v. State, 300 S. W. Rep. 51; Wharton on Homicide, 3rd Ed., Sec. 563; Wharton's Crim. Law, Sec. 658; Bishop's New Crim. Proc., 2nd Ed., Vol. 2, Sec. 552; Mitchell v. State, No. 11,739, not yet reported. There was evidence before the jury that the appellant beat the deceased with a part of an axe-handle; that he stood up and stomped her with his feet, having his shoes on; that he knocked her down with his fist and that he kicked her with his feet, a few moments before she expired; that during his assaults he stated that he wanted to kill her. The scene of the tragedy (the home of the appellant and his wife) revealed manifestations of the assaults in the way of blood on the floor, the mattress on the bed, the axe-handle, the deceased and on the appellant. The appellant testified and introduced evidence that his wife was subject to sick spells accompanied by fits of unconsciousness and bleeding from the nose. He testified denying the assaults and stated that while in

the yard after eating a hearty dinner, the deceased became ill and died while he was endeavoring to bring her in the house. Witnesses testified to the assaults, and the body of the deceased exhibited the effects of them as disclosed by the testimony of officers and others who saw her body after her death.

In the court's charge, a conviction was authorized if the appellant "did voluntarily kill and murder Mary Bookman by some means, instruments and weapons as charged in the indictment."

A doctor testified and described the condition of the deceased in the following language:

"From her hips down to her knees, she was beaten blue. Instead of being black, she was blue. There were no broken bones, but she was badly bruised, and her neck had several bruises around on it, and there was one cut in the back of the head (near the crown of her hair) and a number of bruises on her abdomen. From the nature of those bruises on her abdomen, as I saw them, it would be possible for kicks or blows that would make bruises of that sort to cause internal injuries that would bring about death. As to what caused that woman's death, in my opinion, I will state that my opinion would be an internal hemorrhage caused from injuries, or blows, or whatever was applied to her. If a person in that woman's condition were to drink at one time, an hour or two before her death, a gallon or more of water, in my opinion, that would indicate an internal hemorrhage, and in my opinion, that is what caused that woman's death. * * * If this woman had been suffering with the right kind of acute indigestion prior to this, it would have caused her death just as quickly or more so than an internal hemorrhage. The blows and bruises on her body and abdomen and head were not sufficient to cause her death, and it was something else besides these wounds that brought about her death. The injuries on her body and head did not disclose the cause of her death. * * * I did not open her abdomen and see what was the cause of her death, but it was some internal trouble that caused her death, * * * Heart trouble could have caused her death."

The defensive theory, namely, that death resulted from indigestion, heart failure or other natural causes, was submitted to the jury.

The transaction was one which justified separate counts in the indictment, and the evidence was not such as required an election between the counts. The applicable rule is that stated in Branch's Ann. Tex. P. C., thus:

"If different counts charging the same character of offense are inserted in the indictment to prevent a variance and there is evidence supporting each, the State is not required to elect between such counts."

See Branch's Ann. Tex. P. C., p. 233, sec. 444, subd. 9 and 10, in which many precedents supporting the text are collated. Among them are Gonzales v. State, 12 Tex. Crim. App. 663; Wadkins v. State, 58 Tex. Crim. Rep. 110; Carr v. State, 36 Tex. Crim. Rep. 3.

Perceiving no error presented for review, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—When this case was being considered originally we had not been favored with a brief for appellant and in some way overlooked the fact that many objections to the court's charge had been brought forward.

We fail to see the applicability of the law of negligent homicide under the facts. That the unlawful violence directed towards his wife by appellant would result in her death might not have been contemplated by him, but in inflicting it the elements of negligence or accident seem entirely wanting.

The question that has given us most concern was appellant's objection to the charge because it omitted any instruction on the law of aggravated assault. It has been especially troublesome in view of the express repeal by the Legislature of Articles 1261, 1262, 1263 and 1264 of the Penal Code. The articles in question were as follows:

"Art. 1261. * * * The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the defendant; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears."

"Art. 1262. * * * If any injury be inflicted in a cruel manner, though with an instrument not likely under ordinary circumstances to produce death, the killing will be manslaughter or murder, according to the facts of the case."

"Art. 1263. * * * Where a homicide occurs under the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide, unless it appear that there was an intention to kill,

but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery."

"Art. 1264. * * * Where the circumstances attending a homicide show an evil or cruel disposition or that it was the design of the person offending to kill, he is deemed guilty of murder or manslaughter, according to the other facts of the case, though the instrument or means used may not in their nature be such as to produce death ordinarily."

If the state's evidence is to be believed there is no doubt but that the injuries on deceased were inflicted in a most cruel manner and under circumstances which showed an evil and cruel disposition. It is difficult to bring ourselves to believe that the Legislature contemplated the full effect of the repeal of said articles but only had in mind their relation to the crime of "manslaughter" which was eliminated by the same act of the Legislature. Appellant denied the acts of violence and at the same time asserted that he never at any time intended to kill his wife. There is no question but that the violence was committed by the use of means not in their nature ordinarily calculated to produce death. By the repeal of the articles in question the trial court was precluded from giving specific instructions thereunder and likewise this court can no longer give them application. We must therefore, the best we can, in the absence of the repealed articles, construe our present definition of murder, which is as follows:

"Whoever shall voluntarily kill any person within this State shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing. Article 1256, P. C."

Intent to kill being absent although death results, what offense, if any, would accused be guilty of? If the evidence raise the issue of lack of intent to kill should the court instruct on aggravated assault? These questions were rather exhaustively considered in the recent case of Miller v. State, reported in the last Advance Sheet of the Southwestern Reporter, Volume 13, (2d), page 685, and the conclusion reached that under our present statute an intent to kill was an essential ingredient of the crime of murder, and that when the issue was raised that such intent was wanting an instruction on aggravated assault was called for. It follows that the failure of the court to instruct upon that issue in the present case was an omission which demands a reversal.

There is evidence in the record that appellant had previously been charged with murder in Travis County, convicted upon the trial of manslaughter and served a term in the penitentiary. The charge was objected to because it did not instruct the jury that this incident could not be considered in determining the question of appellant's guilt or innocence in the present prosecution, but should be limited to the question of appellant's credibility as a witness. Upon another trial such instruction would be appropriate.

The motion for rehearing is granted, the judgment of affirmance set aside and the judgment of the trial court is now reversed and the cause remanded.

*Reversed and remanded.*