**Rafael CAVAZOS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 35043.**

Court of Criminal Appeals of Texas.

Jan. 30, 1963.

Rehearing Denied March 13, 1963.

Oscar Cavazos, Raymondville, Gus L. Kowalski, Kingsville, Kelley, Looney, McLean & Littleton by Rogers Kelley, Edinburg, for appellant.

Edna Cisneros, Dist. Atty, Raymondville, J. H. Fugate, Jr., Sp. Prosecutor, Kingsville, Sam L. Jones, Dist. Atty., Corpus Christi, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The prior opinion is withdrawn and the following is substituted therefor.

The conviction is for murder; the punishment, 35 years.

The trial was had in Kleberg County on a change of venue from Willacy County.

The state introduced evidence that the appellant, shortly after 2 A.M. on August 8, 1959, telephoned Dr. Spence, a physician, at his home, asking that he come because something was wrong with Virginia (the deceased). Within a few minutes Dr. Spence arrived at deceased's house and the appellant met him on the front porch dressed in shirt, pants and shoes, and told him that "Someone is trying to, has been trying to do something to us." Appellant turned on the lights and they entered the bedroom and the doctor saw the deceased lying on the bed with the sheet pulled up to her neck and upon examination found that she had been dead less than thirty minutes. Upon inquiry by the doctor, appellant said that when he awoke, he couldn't breathe, felt like someone was choking him and like in a dream he heard Virginia (deceased) calling him, and when he did awake, he found her "like this and then I called you to come." The deceased was an employee in the office of Dr. Spence.

Dr. Spence further testified that the body was clothed in a nightgown and that he observed marks on the right side of the neck and shoulder and some blood spots on the pillow and sheet. The appellant told him that he could not find his pocketbook, but said nothing about money. Dr. Spence also testified that there was no evidence of a struggle and that the things in the house appeared to be in order. He telephoned for an ambulance, the officers were notified and they arrived in a brief time.

The testimony of the Sheriff, deputy sheriff, mortician and the Willacy County physician corroborated that of Dr. Spence. In addition to the testimony of Dr. Spence, it was shown by the testimony of one or more of these witnesses that shortly after they arrived the appellant said he was in bed with the deceased, but denied that he killed her, that he heard someone leave the room, that somebody choked her, and killed her and robbed them. He said that his pocket-book with the $500 in it and the deceased's purse containing $1500 were missing, and whoever got them was the person who committed the crime; that his wallet was found with no money in it in a room adjoining the bedroom and the purse was found in a closet of the bedroom and it contained $29.50 in money. Their testimony reveals that there were bruises and scratches on deceased's neck and shoulder, a cut or bruise on her lip and the nail on the right big toe was almost torn off; and also that the appellant had fresh scratches on his face, arms and chest, and that they could have been made by fingernails and that appellant could not offer any explanation for the scratches.

Dr. Flory, a pathologist, testified that he performed an autopsy on the body of the deceased, and expressed the opinion that the marks he found on the neck could have been made by fingernails; that he took specimens of fingernail scrapings found under the fingernails; and he also expressed the opinion that death was caused by manual strangulation and that he found no other cause of death.

A chemist of the Department of Public Safety testified that he made an analysis of the fingernail scrapings and it showed that they contained human matter.

While testifying, Bessie Flores, a waitress at a tavern, identified the appellant as the person she served along with two or three companions in September, 1960. During this time "he (appellant) was asked by this man that if he, in truth, had been the one * * * who was the cause of his wife's death or his woman's death." To this question he smiled and did not answer, but when the same question was asked again he answered "Yes," and he said "I have done it because my wife is very jealous and was very jealous, and she had me very tired."

Aurora Garcia testified that the appellant, whom she had known for about four years, came to her house after the death of the deceased, Virginia Cavazos, and talked with her about the death stating "that he killed her for me" and that he was going to marry

her, and if she would not marry him then he would kill her and would do something to her family. Aurora testified that "I told him I will not marry with you because just like you have killed Virginia you could kill me."

The appellant did not testify but called several witnesses. He introduced in evidence a marriage license showing the marriage of the deceased and Nieves Pena, September 7, 1938, and there is no evidence that their marriage was dissolved until the death of the deceased. Testimony was offered that the general reputation of the state's witness Aurora Garcia for truth and veracity was bad. Appellant also offered evidence by a physician which was based on what he heard Dr. Flory and others testify as to the cause of deceased's death, and he expressed the opinion that her death was not caused by manual strangulation.

It is contended that the court erred in overruling appellant's motions, first, to dismiss the third count in the indictment for the reason that there was no evidence to support it, and second, in submitting both the first and third count of the indictment and thus permitting the jury to make a finding of guilty without designation of the count under which guilt was found.

■ The first count charges that the appellant killed the deceased by choking her with his hands, and the third count charges that the appellant killed her by strangling her, the manner and means of effecting said strangulation being to the grand jurors unknown. No proof was offered by any member of the grand jury. The evidence adduced on the trial leaves uncertain the precise manner and means of said strangulation. However, the proof is sufficient to show that the deceased was killed by the acts of the appellant. Under such conditions, it was not error to refuse to dismiss the third count in the indictment. Harris v. State, 37 Tex. Cr.R. 441, 36 S.W. 88; Bookman v. State, 112 Tex.Cr.R. 233, 16 S.W.2d 123; McNiel v. State, 131 Tex.Cr.R. 553, 100 S.W.2d 365.

■ Only one offense was charged and that was murder. Where a general verdict is returned, and the evidence is sufficient to support a finding under either of two counts submitted, as there was in the instant case, no error is presented. 29 Tex.Jur.2d, 652, Sec. 335; Martinez v. State, 169 Tex.Cr.R. 229, 333 S.W.2d 370; Johnson v. State, 169 Tex.Cr.R. 612, 336 S.W.2d 175.

■ Complaint is made of the last sentence of the paragraph in the charge defining malice aforethought which is as follows: "If malice be fully conceived and formed, no definite period of time is necessary to intervene between the formed design to kill and the homicide."

Appellant objected thereto on the ground that it was an incorrect statement of the law, that it was calculated to mislead and confuse the jury, and constituted a comment by the court on the weight of the evidence.

The information contained in the quoted statement from the definition under the facts of this case does not appear to be reasonably calculated to injure the rights of the accused. In considering similar contentions it was held that no reversible error was shown. McClellan v. State, 118 Tex.Cr.R. 473, 40 S.W.2d 87; Steadham v. State, 119 Tex.Cr. R. 475, 43 S.W.2d 944.

Appellant complains of the refusal of the trial court to instruct the jury upon the law applicable to circumstantial evidence.

To support this contention the appellant asserts that the testimony of the witnesses Flores and Garcia on its face is discounted, vague, indefinite, frivolous, meaningless, bears no semblance of truth, and is clearly incompetent as a matter of law.

■ The jury are the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. Art. 706 C.C.P. No authority has been cited showing that this statute is not here applicable and we are not aware of any holding

that the testimony of said witnesses could be rejected as a matter of law.

■ Proof of the admissions of the appellant that he killed the deceased renders unnecessary the submission of a charge on circumstantial evidence. 4 Branch 2d 358, Sec. 2050; Stevenson v. State, 169 Tex.Cr. R. 431, 334 S.W.2d 814.

Appellant insists that the court erred in refusing to submit his requested charge to the jury regarding the effect of the exculpatory statements made by him as shown by the testimony of four state witnesses while the state was developing its case in chief.

Whether a charge on exculpatory statements was required under the rule stated in Otts v. State, 135 Tex.Cr.R. 28, 116 S.W.2d 1084, 116 A.L.R. 1454, or whether the facts here come under an exception to the rule such as recognized in 1 Branch's Ann.P.C. 2d, Sec. 95, page 104 and the cases there cited, is not the controlling question.

Appellant also excepted because of the court's failure to submit his affirmative defenses.

The exculpatory statements attributed to the appellant by witnesses for the state were not introduced in connection with a confession or admission of guilt and patently were not offered by the state to prove that appellant and the deceased had been robbed and that some intruder had killed the deceased and had left the scene before appellant could become fully awake.

■ The charge not only failed to instruct the jury that the state was bound to prove the falsity of appellant's exculpatory statements, but failed to submit the affirmative defense raised by such exculpatory statements and failed to instruct the jury to acquit if they found or had reasonable doubt that an intruder or some other person entered the house, choked and killed the deceased and robbed them.

The absence of any submission of the defense raised by appellant's exculpatory statements, or of an instruction requiring the state to disprove them, was calculated to injure the rights of the appellant and calls for reversal.

■ Upon another trial, the photographs of the body of the deceased and of the death bed, which are obviously inflammatory, should not under a similar record be admitted in evidence. They do not appear to be admissible under the rule stated in Alcorta v. State, Tex.Cr.App., 294 S.W.2d 112, 115.

Appellant's motion for rehearing is granted; the affirmance is set aside and for the errors pointed out the judgment is reversed and the cause remanded.

Opinion approved by the Court.