**Dale Rupert JORDAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 47917.**

Court of Criminal Appeals of Texas.

March 13, 1974.

Rehearing Denied March 27, 1974.

Robert B. Maloney, Dallas, for appellant.

Henry Wade, Dist. Atty., William J. Teitelbaum, Dallas, Jim D. Vollers, State's Atty. and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

Appellant seeks reversal of his conviction for the offense of murder with malice following a jury trial. The jury assessed punishment at life imprisonment.

For reversal, appellant relies on four grounds. The grounds are required to be considered in relation to the recorded events leading to the conviction.

The body of the deceased, Jane Coleen Peyatt, was discovered at the Lancaster city dump in Dallas County at about 10:45 A.M. on Saturday, August 15, 1970, underneath a cardboard box designed to contain, and bearing the stock or model number of, a Sears Roebuck and Company lawnmower. The body was clad in a brassiere and a short floral dress pulled up to expose the breasts. Under the body were a pair of yellow panties and yellow shorts. Near the body was a black Amway sales kit. The cause of death was a gunshot wound through the chest.

Mrs. Peyatt, twenty-one years of age, was last seen alive the previous Friday evening on Farnsworth Street in Dallas. At that time Mrs. Peyatt, with dark shoulder length hair and wearing a short floral dress, was walking from door to door carrying a black Amway sales kit. From information supplied by people who had talked with her, her movements were traced along Farnsworth Street toward Ledbetter Street, where her husband and two small children waited in an automobile, to 6140 Farnsworth Street, the residence of Mrs. Sandra Tilley.

Mrs. Tilley testified that she heard a knock on her door. By the time she disengaged herself from her household chores and reached the door, the caller, a young lady, with dark shoulder length hair and wearing, as Mrs. Tilley recalled, a skirt and blouse, and carrying a black kit similar to the one found with the body of the deceased, was walking away. Mrs. Tilley observed as the woman walked next door and then crossed the street to the house designated as 6139 Farnsworth Street and identified as the home of appellant. Mrs. Tilley watched as the woman knocked on the door, the door opened, and the woman entered. Before she returned to her household duties, Mrs. Tilley stood at her door for a few minutes, during which time she did not see the woman leave appellant's house. Although Mrs. Tilley could not otherwise identify the caller, she was home all day and no other saleslady came by that day.

Shortly thereafter, Mrs. Peyatt's husband instituted an unsuccessful search for his wife. He reported to the police that she was missing. A police canvass of the houses on Farnsworth Street beyond the appellant's house toward Ledbetter Street failed to reveal anyone who had seen Mrs. Peyatt.

Between 2:00 A.M. and 3:00 A.M. on Saturday morning, Richard Crabtree, in visiting the house next to the house of appellant's, looked toward appellant's house. He saw appellant's 1962 Chevrolet automobile with the turtle hull up parked next to the side door steps. A dim light inside appellant's house was showing through the partially open side door. An object was behind the car. Crabtree could not identify the object, but he stated that it could be consistent with being the lawnmower box that was found over the deceased's body.

On Saturday morning prior to discovery of the deceased's body, Patrolman John Thomas Boone of the Dallas Police Department, in response to the missing person complaint, began a door-to-door inquiry on Farnsworth Street. Arriving at 6139 Farnsworth Street and receiving no re-

sponse to his knock, he started to leave and encountered the appellant walking along the side of the house. Appellant asked if he could help, or what he could do for, the officer. Officer Boone told appellant what he was doing, gave a description of Mrs. Peyatt, stated that she was selling Amway products door to door the previous evening, and asked appellant if he had seen anyone fitting that description.

Appellant, as Officer Boone recalled, " . . . stated that there had been a lady that came to the door and that he didn't know for sure what she was selling, but he had stated to her that he didn't want any and she left." When appellant's counsel asked Officer Boone to relate the exact conversation, the officer testified that appellant " . . . told me that there had been someone came through. In fact, I believe he stated that he had been watching television and it was about the time the news went off, and that she was selling something but he couldn't tell me what it was and he didn't know if she fit the description, but when he stated he wasn't interested, then she left."

Following discovery of the body, Dallas Police Sergeant C. N. Dhority went to appellant's house on Saturday afternoon, but he found no one there. He returned on the following Sunday morning with Detective G. A. Thomason, and appellant was home. According to Sergeant Dhority, he identified himself and stated they were investigating a murder. Appellant invited the officers into the house. Sergeant Dhority told appellant of the circumstances of the case. He asked if the officers " . . . could look around the house." Appellant replied, "Yes, help yourself." The officers made a brief survey of the house, observing the sheets on the bed and what appeared to be blood spots on the living room floor. Appellant was then arrested for the murder of the deceased.

Before leaving the house to take appellant to jail, appellant was informed that the officers would like to search the house further, to which appellant replied, "Well, just leave it unlocked and open." However, the officers requested appellant to, and upon departure he did, lock the house. Sergeant Dhority informed appellant, and appellant understood, that he did not have to give the officers the right to search and that he could refuse the search; nevertheless, appellant said he did not have anything to hide, "to go ahead." Additionally, appellant was told the officers wanted to look in both of appellant's cars. Appellant assented and gave the officers a key to one of the cars.

After appellant was placed in jail, Sergeant Dhority asked appellant if the officers could look into the two automobiles at appellant's house. Appellant replied, "Yes."

Early that Sunday afternoon, Officers Dhority and Thomason, after obtaining a search warrant, went back to and searched appellant's premises with other officials. As a result of the search numerous items, including bedding, clothing, a damp mop, paint chips, floor scrapings, and a lawnmower for which appellant had exhibited a sales receipt showing its purchase from Sears Roebuck and Company, were seized. During the search, Sergeant Dhority noticed that the bumper of appellant's 1962 Chevrolet automobile was dirty and bore "drag" marks. The trunk contained a bumper jack.

Pursuant to appellant's motion to suppress evidence resulting from the search, the court, during the trial, heard evidence thereon outside the jury's presence. Summarized, the evidence was that at a hearing on a writ of habeas corpus following appellant's arrest, testimony was adduced from Detective Thomason concerning the search warrant; Detective Thomason said nothing about appellant giving consent for the search. The officer explained that the reason the consent was not mentioned in the hearing was that the subject did not come up. The grand jury testimony of Sergeant Dhority indicated that he searched by authority of the search war-

rant. This officer stated that the search warrant was obtained to "back up" the consent given by appellant. Evidence was introduced to contradict Sergeant Dhority's testimony concerning appellant's arraignment. Other evidence was directed toward demonstrating that the search warrant was based on a defective affidavit.

Following the hearing, the court found, and entered written findings, that appellant knowingly, intelligently and voluntarily gave oral consent to the search, that the resultant search was lawful, and that the items recovered as a result thereof were admissible. As the trial progressed, appellant renewed his motion to suppress, moving the court to reconsider its prior ruling and to withdraw from the jury's consideration all the evidence obtained as a result of the search. Again, the court retired the jury and heard evidence. At the conclusion of this hearing, the court, on consideration of all evidence bearing on the matter, overruled the motion.

It was shown that the lawnmower box covering the deceased's body came from the Sears Roebuck and Company store located in Westcliff Mall in Dallas; and that, on May 12, 1969, appellant had purchased from that store the lawnmower, bearing the same stock or model number shown on the box, that was found on appellant's premises. There was no testimony that the lawnmower box had contained the lawnmower purchased by appellant. Tests indicated that an indention found on the lawnmower box could have been made by the box being placed on the hook portion of the bumper jack as it was positioned when found in the trunk of appellants's 1962 Chevrolet automobile.

Other items seized on appellant's premises were subjected to tests. Human blood, which the chemist could not type, was found on three sheets. Blood was found on the mattress cover, on the pillow and on the mop; however, one chemist could not determine whether it was human blood, and another chemist determined that it was human blood but he could not type it.

Paint samples taken from the side door facing on appellant's house contained the same chemical elements in similar concentration as contained in the paint scrapings taken from the lawnmower box. Various other paint samples and scrapings compared did not match or the tests were inconclusive.

The bullet that made the gunshot wound in the chest of the deceased was recovered from the body. The bullet was identified as having been fired from a .22-caliber pistol purchased by appellant for, and found at the house of, his mother, whom appellant had visited the Saturday the body was discovered.

Appellant did not testify. He did not call any defense witnesses during the guilt-innocence stage of the trial. He relies solely upon the evidence adduced through the State's witnesses to support his grounds of error.

 Presented by the first two grounds are appellant's contentions that the trial court erred in finding that appellant consented to the search made, and that, since the search was conducted pursuant to an invalid search warrant, it was error to admit the evidence resulting from the search. The grounds are without merit.

Aside from any conflict presented in the testimony of Officers Dhority and Thomason and any question of the validity of the search warrant, upon which appellant bases his argument that the court erred in finding a valid consent to search was given by appellant, there remains uncontradicted the officers' testimony of appellant's oral consent to search. The testimony of consent, untainted by any suspicion of duress or coercion, particularly since appellant was advised of his right to withhold his consent, amply supports the trial court's finding that the consent was knowingly, intelli-

gently and voluntarily given. Marshburn v. State, 491 S.W.2d 663 (Tex.Cr.App.1973); Allen v. State, 487 S.W.2d 120 (Tex.Cr.App.1972). The consent to search being valid, appellant waived the necessity of a search warrant or a showing of probable cause therefor. Giacona v. State, 397 S.W.2d 863 (Tex.Cr.App.1965). Having given a valid consent to search, appellant cannot now complain of the fruits of the search. Weatherly v. State, 477 S.W.2d 572 (Tex.Cr.App.1972). The first two grounds are overruled.

Appellant requested his tendered instruction on the law of exculpatory statements be included in the court's charge to the jury. The request was predicated on the statements Officer Boone testified appellant had made to him. The court refused to instruct the jury as requested. The refusal is the subject of appellant's third ground of error.

 Relying on Cavazos v. State, 365 S.W.2d 178 (Tex.Cr.App.1963), appellant submits that the failure of the court to charge on the law concerning appellant's exculpatory statements introduced by the State's witness requires a reversal of the conviction. To the extent that the case requires a charge on exculpatory statements where the statements do not amount to an admission plus an assertion that would exculpate an accused, *Cavazos* was overruled by a divided court in Simon v. State, 488 S.W.2d 439 (Tex.Cr.App.1972). As determined in *Simon*, a charge concerning exculpatory statements is required only when an accused's statement amounts to an admission with an assertion that would exculpate him. Here, the statements attributed to appellant constitute neither an admission nor an exculpation. This ground is overruled.

The last ground of error is a challenge to the sufficiency of the evidence to support the conviction. The challenge is premised on the proposition that the evidence does not meet the standards of proof re-quired by the court's charge on circumstantial evidence. The proposition is not tenable.

■■ It was the province of the jury to resolve the issues of fact. Its finding contrary to appellant's challenge, being amply supported by the evidence detailed above, will not be disturbed on appeal. Blanton v. State, 144 Tex.Cr.R. 198, 161 S.W.2d 1063 (1942). The last ground is overruled.

The trial court's judgment of conviction is affirmed.

Opinion approved by the Court.