NUMBER 13-99-435-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


MARIO VEGA , Appellant,


v.


THE STATE OF TEXAS , Appellee.

___________________________________________________________________


On appeal from the 206th District Court

of Hidalgo County, Texas.

___________________________________________________________________


O P I N I O N


Before Chief Justice Valdez and Justices Dorsey and Hil l (1)

Opinion by Justice Hill


 Mario Vega appeals his conviction by a jury of the offense of murder. The jury assessed his punishment at life
imprisonment in the Texas Department of Criminal Justice, Institutional Division. Vega presents several points of error, in
which he contends that: (1) the trial court erred by admitting the first statement that he gave to police into evidence because
the taking of the statement violated his rights under the Fourth Amendment to the Constitution of the United States and 
under art. I, sec. 9 of the Texas Constitution; violated his rights to due process; and was the result of an illegal arrest or
detention; (2) the trial court erred by admitting his second statement into evidence because it was poisonous fruit from the
first statement; it was the product of an illegal detention; it was taken without his attorney's permission; there was not a
proper waiver; the magistrate was not neutral; the statement was taken after Vega was told that it would help him; it was
taken in violation of his right to due process; and the statement was taken in violation of his rights under the Fourth
Amendment to the Constitution of the United States and under art. I, sec. 9 of the Texas Constitution; (3) the trial court
erred by failing to include in the charge to the jury a charge on the lesser-included offense of aggravated assault; (4) the trial
court erred by allowing prejudicial photographs of the victim's mutilated body at the scene to be introduced into evidence;
(5) the trial court erred by allowing blood and saliva samples to be introduced into evidence; (6) Vega was denied effective
assistance of counsel when his counsel failed to object to the State's soliciting witnesses' recommendations as to the proper
punishment; and (7) the trial court erred by allowing hearsay testimony to be admitted into evidence. 

 We affirm, because: (1) Vega's first and second statements were taken in accordance with the requirements of the Texas
Family Code, were not obtained illegally, and did not violate Vega's rights under either the United States or Texas
Constitution; (2) the trial court did not err by failing to submit to the jury a requested charge on the lesser-included offense
of aggravated assault because there was no evidence that, if Vega was guilty at all, he was guilty only of the offense of
aggravated assault; (3) the trial court did not err in admitting autopsy photographs into evidence because their probative
value was not substantially outweighed by prejudice; (4) the trial court did not err in admitting collection sample kits of
Vega's blood and saliva, because they were not illegally obtained; (5) we are unable to conclude that Vega's counsel was
ineffective by failing to object to testimony of the victim's relatives as to their punishment recommendations where the
record is silent as to the attorney's reasons for failing to object; and (6) the trial court did not err in admitting certain
testimony because that testimony did not constitute hearsay, and because, in at least one instance, Vega failed to object to
the testimony. 

 Evidence was presented at trial from which the jury could reasonably have determined that Vega participated in the murder
of Stephen Wiley, burned the body, and then burned Wiley's automobile. Vega does not challenge the sufficiency of the
evidence.

 In point of error one, Vega contends that the trial court erred by overruling his motion to suppress the first statement that
he gave to police. In a hearing on a motion to suppress evidence, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim.
App. 1999). When reviewing a trial court's determination of such a motion, we are to afford almost total deference to a
trial court's determination of historical facts that the record supports and to its rulings on the application of law to fact
questions, also known as mixed questions of fact and law, when those fact findings and rulings are based upon an
evaluation of credibility and demeanor. See Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998). In determining
whether the trial court's ruling is supported by the record, we consider evidence presented at the hearing on the motion as
well as evidence presented at trial. See Barley v. State, 906 S.W.2d 27, 31 n.2 (Tex. Crim. App. 1995). We review de novo
mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. Id. 

 Roel Benavides, Jr., an investigator for the Hidalgo County Sheriff's Department, received information that a corporal with
the Edinburg Police Department had communicated to the sheriff's department that Vega was a suspect and that the
information had come from a named individual. Subsequently, Benavides contacted that individual, who told Benavides
that Vega had told him that he had burned and killed the victim. Benavides then proceeded to pick up Vega, a minor, at his
high school in Edinburg.

 Benavides testified that he gave Vega the warnings required by the Texas Family Code and, additionally, a magistrate also
warned Vega, apart from the presence of any law enforcement official. Benavides indicated that Vega understood his rights.
He stated that he reduced Vega's statement to writing, then had it typed. Benavides testified that Vega did not request any
changes. Thereafter, the magistrate, again outside the presence of anyone else but himself and Vega, read the statement to
Vega. It appears that the procedure followed by Benavides in obtaining Vega's statement would make that statement
admissible under the requirements set forth in section 51.095 of the Texas Family Code. See Tex. Fam. Code Ann. §
51.095 (Vernon Supp. 2001). Vega first contends that the statement was nevertheless inadmissible because it was the
product of an illegal arrest and detention. The Texas Family Code provides for several instances when a child may be taken
into custody, including by a law-enforcement officer, if there is probable cause to believe that the child has engaged in
conduct that violates a penal law of this state. Tex. Fam. Code Ann. § 52.01(a)(3)(A) (Vernon Supp. 2001). Benavides had
probable cause to believe that Vega had engaged in the penal offense of murder. See Cornealius v. State, 900 S.W.2d 731,
733 (Tex. Crim. App. 1995). He therefore was authorized under section 52.01 to take Vega into custody without a warrant. 
Id. Such an arrest does not violate either the Texas or United States Constitution. Id.

 Vega presents a lengthy argument that he was arrested at the school, but, as we have noted, even if he were, the arrest is
legal because the family code section authorizing that he be taken into custody does not require a warrant, only probable
cause. Vega argues that it was illegal because the arrest did not fall within one of the warrantless arrest exceptions found in
Chapters 14 and 15 of the Texas Code of Criminal Procedure. This argument completely ignores the authority in the family
code to which we have referred that authorizes Vega to be taken into custody without a warrant. Vega relies upon Kelley
v. State, 676 S.W.2d 646 (Tex. App.--Houston [1st Dist.] 1984, pet. ref'd). In that case the court held that a search incident
to Kelley's arrest was invalid because the Code of Criminal Procedure did not authorize his arrest without a warrant, even
though officers had probable cause for the arrest. We find the case to be distinguishable because there is no indication that
Kelley was a juvenile.

 Vega states that the Miranda warnings were not given to him until the magistrate read them to him. The Texas Family
Code mandates that a magistrate must make the required warning before the making of the juvenile's statement. Tex. Fam.
Code Ann. § 51.095 (a) (1) (A) (Vernon Supp. 2001). Benavides testified that he did not take Vega's statement until after
both he and the magistrate had given Vega the required warnings. 

 Vega next alleges that he was not taken to a juvenile detention facility without unnecessary delay, as required by section
52.02 of the Texas Family Code. See Tex. Fam. Code Ann. § 52.02 (Vernon Supp. 2001). Benavides took Vega from
school to the juvenile section of the Hidalgo County Sheriff's office, which he testified is a designated juvenile holding
area. Such a designated facility, which may be an office or room located in a police facility or sheriff's offices, qualifies as a
place for temporary detention of a juvenile. Tex. Fam. Code Ann. § 52.025(a) (Vernon Supp. 2001). There is no evidence
in the record indicating that the area where Benavides took Vega had not been so designated. Consequently, we hold that
there is nothing to indicate that Benavides did not comply with the requirement of section 52.02 as to where he took and
interviewed Vega. 

 Vega also suggests that the statement was the result of an illegal detention because he was held for more than six hours. A
child may not be detained in a juvenile processing office for longer than six hours. Tex. Fam. Code § 52.025(d) (Vernon
Supp. 2001). The evidence shows that Officer Benavides picked up Vega from school at 1:47 p.m. on August 28, 1997, but
it does not show what time he arrived at the juvenile processing office. A justice of the peace warned Vega of his rights at
5:50 p.m. Vega was warned again of his rights by a magistrate at 7:17 p.m. The giving of his statement was completed by
7:59 p.m., based upon the magistrate's acknowledgment of a voluntary written statement by a juvenile. That
acknowledgment bore the time 6:59 p.m., but the trial court concluded, based upon testimony by the justice of the peace,
that his clock was approximately one hour slow. 

 This same justice of the peace, Aspiration Jackson, testified that he warned Vega of his rights before Vega had given any
statement. The time on the magistrate's warning reflects that Judge Jackson gave the warning at 6:50 p.m. Judge Jackson
indicated that he did not supply the time on that document. At that time, according to Jackson, he stepped out and told the
officers that Vega was willing to give a statement. Jackson said he warned Vega again after he had given a statement. 
While that magistrate's warning shows that the statement was completed at 8:15 p.m., the top of the form, which Judge
Jackson said that he did not fill in, showed that he gave the warning at 7:14 p.m. 

 We believe that the record is unclear as to whether Vega was detained longer than six hours, but that the record reflects
that Vega gave officers his statement within six hours from the time that he arrived at the juvenile detention area in the
sheriff's office. Consequently, we conclude that Vega was lawfully detained at the time he made his statement. See Laird
v. State, 933 S.W.2d 707, 714 (Tex. App. -- Houston [14th Dist.] 1996, pet. ref'd). Therefore, his statement was not the
product of any illegal detention. Vega contends that he was held from forty-five minutes to three hours after the mandatory
6-hour limit. Inasmuch as Vega was picked up from his high school at 1:47 p.m. and checked in to the juvenile detention
center at 8:45 p.m., after waiting at that facility to be checked in, the evidence shows that if he were detained for more than
six hours at the juvenile processing facility, it would have been less than an hour in excess of the time. Vega makes no
contention that he did not make his statement within the six-hour period. 

 Vega's brief could be interpreted as arguing that the arresting officer violated his rights by not informing the juvenile
officer present at the sheriff's office of his arrest. After an investigating officer takes a child into custody and complies with
the requirement of taking the child to a proper designated facility as required by Tex. Fam. Code § 52.02, the decision
concerning whether to detain the child is to be made, not by law enforcement personnel, but by the intake or other
authorized officer of the court. Comer v. State, 775 S.W.2d 191, 194 (Tex. Crim. App. 1989); In the Matter of R. R., 931
S.W.2d 11, 13-14 (Tex. App. -- Corpus Christi 1996, no writ). While Vega states in his brief that no juvenile officer was
informed that he was in custody, he does not refer to any portion of the record that reflects that the juvenile officer at the
sheriff's department was not involved in the decision to detain him. Further, such an assertion played no part in Vega's
motion to suppress, either as written or argued to the court. Further, he did not object to the introduction of his statement
on this ground. Consequently, we hold that nothing is preserved for review with respect to this contention. Jones v. State,
944 S.W.2d 649-50 (Tex. Crim. App. 1994). 

 Vega also states in his brief that no attorney was notified. At the time in question, Vega was not represented by an attorney
and had not requested one. Vega does not refer us to any authority holding that a juvenile must be represented by an
attorney before a statement is taken from the juvenile, and we are not aware of any.

 Vega also urges that his parents were not notified of his detention by law enforcement officers, but rather learned it
secondhand. Vega's mother testified that an officer, who could have been a security officer for the school district, came to
her home to talk about another son and told her that Vega had been arrested. She said she went to the sheriff's office
around 2:30 or 3:00 the day that Vega was arrested. In his brief, Vega acknowledges that the statement was not taken until
well after that time. Also, Vega did not urge any failure of his parents to be notified as a basis for his motion to suppress,
either in writing or in argument, nor did he object to his statement's admission on that basis. We therefore hold that nothing
is preserved for review as to this issue. Jones, 944 S.W.2d at 649-50. We overrule point of error one.

 In point of error two, Vega contends that the trial court erred in admitting into evidence a second statement that he gave on
September 3, 1997. Investigator Benavides testified that he took Vega from the juvenile detention center, pursuant to court
order, for the purpose of going for a medical exam, since Vega had initially indicated that he had been sexually molested by
the victim. He said that Vega, on his own initiative, indicated a desire to amend the statement that he had given on August
28. After Vega was again given proper warnings in accordance with the Texas Family Code, his amended statement was
reduced to writing and signed by Vega after the proper admonishments by a justice of the peace. 

 Vega's first objection to the second statement is that it resulted from his illegal arrest and detention preceding his first
statement. Inasmuch as we have held there was no illegal arrest or detention preceding the first statement, we find Vega's
objection to be without merit. 

 The juvenile court appointed an attorney to represent Vega prior to his giving the amended statement. Investigator
Benavides sought to notify Vega's attorney about the fact that Vega was in the process of amending his statement, but the
attorney was unavailable at the time of his call. Benavides notified Vega that his attorney was unavailable. Vega did not
seek any additional time in order to consult with his attorney. Vega complains that his second statement was taken without
his attorney's permission. His complaint is based upon Tex. Fam. Code § 51.09, which provides that a juvenile may waive
his rights under the family code or under the constitution or laws of Texas or the United States if certain conditions are met. 
See Tex. Fam. Code Ann. § 51.09 (Vernon Supp. 2001). One of those conditions is that the waiver must be made by the
juvenile and his or her attorney. However, Tex. Fam. Code § 51.095 sets forth the requirements for the admissibility of a
juvenile's statement, "notwithstanding section 51.09." Tex. Fam. Code § 51.095(a) (Vernon Supp. 2001). Accordingly, we
hold that where, as here, the making of the new statement originated with Vega, and where that statement meets the
admissibility requirements set forth in Tex. Fam. Code § 51.095, the statement is admissible even though the juvenile's
attorney does not join in waiving the juvenile's rights.

 In his brief in support of his motion to suppress, Vega urged that section 51.095 was not applicable because the offense
occurred prior to its effective date of September 1, 1997. However, an examination of section 51.09 prior to its division in
1997 into sections 51.09 and 51.095 shows that after it set forth the waiver language contained in the current section 51.09,
it contained a similar provision showing that those provisions were inapplicable when certain requirements were met with
respect to a statement by a juvenile. See Tex. Fam. Code Ann. § 51.09 (b) (Vernon 1986 & Supp. 1996). We therefore
hold that the attorney's participation in the waiver was not required.

 Vega contends that the statement was inadmissible because the magistrate who warned him was not a neutral magistrate. 
Vega's mother testified that she wrote out a list of names and gave it to the justice of the peace to give to Mario so that he
would know that she had talked to the judge. She said that the justice of the peace had told her and Mario's stepfather that
as soon as Mario gave out the names of the guys he was with he would do all his best for him to come out of jail. Justice of
the Peace Torres testified that he made no promise to the Vegas concerning what would happen to their son if he gave a
statement. He did relate that he passed a note from the Vegas to the investigator in their son's case. We hold that this
evidence would support a conclusion that Justice Torres was a neutral magistrate. Vega, in his brief in support of his
motion to suppress, noted that Justice Torres' testimony contradicted that of Vega's mother. 

 Vega also makes reference to the fact that the investigator who checked Vega out of the juvenile detention center stated
that he did so in order to take him to the hospital for a medical examination based upon his having alleged that he was
molested by the victim, while the order that the investigator actually obtained was an order to transport Vega to the sheriff's
department. However, Vega presents no argument or authority to support his contention that this discrepancy as to where
he was to be transported renders his voluntary statement inadmissible. Therefore, nothing is preserved for review as to that
issue. Tex. R. App. P. 74 (f); Garcia v. State, 919 S.W.2d 370, 396 (Tex. Crim. App. 1996). We overrule point of error
two.

 Vega urges in point of error three that the trial court erred in refusing to submit to the jury his requested instruction on the
lesser-included offense of aggravated assault. A defendant is entitled to an instruction on a lesser-included offense where
the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some
evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he or she is guilty only of the
lesser-included offense. Forest v. State, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999). Vega's argument under this point
appears to be based upon his second statement. In that statement, Vega said that others attacked the victim, while he went
up to them and told them, "This was not suppose [sic] to happen, I only came here to get some weed." He then spoke of his
efforts to cover up evidence of the offense. Vega's second statement, if believed, would show that he was not guilty of
either murder or aggravated assault. It did not constitute any evidence that, if he were guilty, he was only guilty of the
lesser-included offense of aggravated assault. We overrule point of error three.

 Vega contends in points of error four and five that the trial court reversibly erred in admitting photographs of the
mutilated corpse of the deceased victim. Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue
delay, or by needless presentation of cumulative evidence. Tex. R. Evid. 403. Several factors that may be considered in
determining whether the danger of unfair prejudice substantially outweighs the probative value of photographs include the
number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether
they are close-up, whether the body is naked or clothed, and the availability of other means of proof and the circumstances
unique to each individual case. See Sonnier v. State, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). The admissibility of
photographs over any challenge is within the sound discretion of the trial judge. Id.

 The photographs that were admitted into evidence are autopsy photographs that are somewhat gruesome, although they 
only appear to show evidence of the reality of the crime Vega committed. There does not appear to be any evidence of
tampering, enhancement or any attempt by the State to inflame, confuse, or mislead the jury in the presentation of the
photographs. When, as here, the photographs merely show what the defendant has himself done, we cannot hold that the
trial court abused its discretion merely because it admitted the evidence. Chamberlain v. State, 998 S.W.2d 230, 237 (Tex.
Crim. App. 1999); Sonnier, 913 S.W.2d at 519. We also note that autopsy photographs are generally admissible unless
they depict mutilation of the victim caused by the autopsy itself. Salazar v. State, 38 S.W.3d 141, 152 (Tex. Crim. App.
2001). 

 Vega relies upon the cases of Welch v. State, 576 S.W.2d 638 (Tex. Crim. App. 1979) and Cavazos v. State, 365 S.W.2d
178 (Tex. Crim. App. 1963). InCavazos, the court noted that photographs of the deceased, who allegedly had been
strangled in bed by her husband, did not appear to be admissible under the rule stated in Alcorta v. State, 294 S.W.2d 112,
115 (Tex. Crim. App. 1952); Cavazos, 365 S.W.2d at 181. In Alcorta, the court allowed the admission of photos showing
several wounds to the body of the deceased, apparently because there was a dispute in the evidence concerning the number
of wounds inflicted by the defendant. Alcorta, 294 S.W.2d at 114. It based its decision upon the rule that 

 photographs which, in the light of the whole case, aid the jury in arriving at the truth of the matter, serve to illustrate some
point or solve some question, or shed light upon matters connected with the proper solution of the case are admissible, and
it is only where the photographs serve no legitimate purpose and are calculated to seriously inflame the minds of the jurors
and tend to cause them to return a more onerous verdict than the facts call for or justify are such photographs excluded. Id.
at 115.



 The Texas Court of Criminal Appeals, in Martin v. State, 475 S.W.2d 265, 268 (Tex. Crim. App. 1972), overruled the
former rule that gruesome photographs are not admissible unless they tend to solve a disputed fact issue. Martin, 475
S.W.2d at 268. 

 In Welch, the court held that evidence of the deceased hanging from the tow cable of a wrecker was admissible because, if
a verbal description of the body and scene is admissible, then a photograph of the scene described is also admissible.
Welch, 576 S.W.2d at 640. The court noted, however, that when particularly gruesome or horrible details are contained in
the photograph that might inflame the jurors' emotions, then the trial court in its discretion must determine if the
photograph is of sufficient probative value to be admitted. Id. at 641. The court upheld the admission of the photograph of
the deceased suspended from the towing cable based upon its having overruled in Martin the test that photographs were
inadmissible because they were not relevant to a disputed fact issue. Id. We therefore note that the rule of law with respect
to photographs relied upon in Cavazos has been overruled, while the opinion in Welch, when taken together with the more
recent authorities that we have cited, supports our decision. We overrule points of error four and five.

 Vega argues in point of error six that the trial court erred in admitting collection sample kits of his blood and saliva,
obtained with his consent, but without the consent of his attorney. He again relies upon Tex. Fam. Code § 51.09 (a), which
indicates that a juvenile may waive rights when joined by his attorney in waiving those rights. In making this argument,
Vega presumes that a juvenile has the right to refuse to give such samples. He makes no argument nor presents any
authority upholding such a proposition. Also, while he objected to evidence of his consent to give samples, he made no
objection to the introduction of evidence concerning the samples, which were used through DNA to connect him to the
crime scene. We hold that nothing is presented for review. Parmer v. State, 38 S.W.3d 661, 670 (Tex. App.-Austin 2000,
pet. ref'd). We overrule point of error six. 

 Vega insists in point of error seven that he was denied effective assistance of counsel at punishment when his attorney
failed to object to certain witnesses' recommendations on the proper punishment. In order to prevail on a claim of
ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that his counsel's
representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. 
Strickland v. Washington, 466 U.S. 668, 687 (1984). The review of defense counsel's representation at trial is highly
deferential. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). We engage in a strong presumption that counsel's
actions fall within the wide range of reasonably professional assistance. Id. It is an appellant's burden to overcome the
presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id.

 Mary Wiley, the victim's mother, testified that she thought that Vega should go to prison rather than receive probation. 
Contrary to Vega's assertion in his brief that all the State's witnesses recommended life imprisonment, Mary Wiley made no
specific recommendation as to how long a prison sentence Vega should receive. Beth Parks, the victim's sister, testified
that she thought a just or appropriate punishment for Vega would be "what he did to my brother or life in prison." 

 An expert witness may not recommend to the trier of fact a particular punishment. See Sattiewhite v. State, 789 S.W.2d
271, 290 (Tex. Crim. App. 1989). This rule has been extended to non-expert witnesses, including testimony of crime
victims. Wright v. State, 962 S.W.2d 661, 663 (Tex. App.--Fort Worth 1998, no pet.); Hughes v. State, 787 S.W.2d 768,
771 (Tex. App.--Corpus Christi 1990, pet. ref'd). However, in this case the record is silent as to why Vega's counsel failed
to object to the testimony that Vega now complains of. When the evidence contains no evidence of the reasoning behind
trial counsel's actions, we cannot conclude counsel's performance was deficient. See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994); Johnson v. State, 987 S.W.2d 79, 88 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd). We
overrule point of error seven. 

 Vega contends in point of error eight that the trial court erred in admitting hearsay evidence over his objections. "Hearsay"
is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the
truth of the matter asserted. Tex. R. Evid. 801 (d). In the first example noted by Vega, a witness was asked the question,
"Okay. Now, when was it, sir, that you, if you remember, did you realize that the argument that you had heard had led to a
-- to the death of a person?" The question asked called for a date or time, not a statement. Therefore, it was not a question
that sought to elicit hearsay testimony. Therefore, the trial court did not err in overruling Vega's objection. In response to
the question, the witness answered, "When my wife told me she had seen it -- well, that's when it stopped. When they went
and summoned me." The exact meaning of the witness's answer is unclear in the context. It is unclear what the witness's
wife had seen. No objection was made to this response and Vega does not urge in his brief that it constituted hearsay. 
Shortly thereafter, the same witness was asked, "Was it -- was the death of this person on TV or something?" The witness
replied, "Someone went and told my wife and my wife told me that I needed to present myself at the court." This question
did not necessarily call for a hearsay response. The hearsay of which Vega now complains is contained in the witness's
answer. The answer consists of two parts. One is that someone told the witness's wife something and the other is that his
wife told him that he needed to present himself at the court. The first part of the answer does not contain evidence of a
statement made by someone other than the declarant and is therefore not hearsay. The second part includes a statement
made by the witness's wife, but there is no indication that the witness's answer sought to show the truth of the matter
asserted, that the witness needed to present himself at court. In any event, Vega did not object either to the question or the
answer. Consequently, nothing is presented for review with respect to any hearsay that might have been contained therein. 
See Parmer, 38 S.W.3d at 670.

 In the second example given by Vega under this point of error, a patrol supervisor testified that he received a call about a
possible suspect in the disappearance of the victim in this case and that the caller gave him Vega's name and that Vega
might be found on the north side of Edinburg by Pinkston. The State stipulated that it was not offering this evidence for the
truth of the matter asserted and the trial court instructed the jury that it could not consider the evidence for that purpose. 
Rather than being offered to establish the truth of the matter asserted, the evidence was offered to show how Vega became
a suspect in the case. Because this evidence was not offered to establish the truth of the matter asserted, it was not hearsay. 
Consequently, the trial court did not err in overruling Vega's objection. 

 In his third example, Vega refers us to an instance in which a witness, Raul Mata, was asked what Orlando Adriano said to
him. Vega's hearsay objection was overruled. Mata testified, in response to the question, that Orlando told him that he,
Mata, was not worth anything. When Mata's testimony is examined, it is evident that this statement was offered to prove
what Orlando said to Mata, not for the truth of what Orlando said. In other words, the State was not seeking to prove that
Mata was not worth anything, only that Orlando had made that comment to him. Inasmuch as the statement was not
offered for the truth of the matter asserted, the testimony was not hearsay and the trial court did not err in overruling Vega's
objection. We overrule point of error number eight. 

 The judgment is affirmed. 

______________________________

JOHN HILL

Senior Justice



Do not publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 1st day of November, 2001.

1. Senior Justice John Hill assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't
Code Ann. § 74.003 (Vernon 1998).